In the Matter of the Petition of E. ELLERY ANDERSON to Vacate an Assessment.

The city of New York, in making a street improvement, the expense of which is to be charged upon the owners of property in the vicinity, acts in some sense as the agent of said owners; and, in the discharge of such assumed agency, is required to exercise reasonable care and diligence in connection with the work. If by gross negligence on the part of the city or the fraud of its officers the expense of the work has been largely and unnecessarily increased, the assessment therefor may, under the act of 1880 (§ 12, chap. 550, Laws of 1880), be reduced by deducting therefrom such unnecessary expenditures.

In proceedings under said act to reduce an assessment for a local improvement, it appeared that in the estimates for the work contained in the proposals were 10,000 cubic yards earth excavation, and 20,000 cubic yards rock excavation. No tests whatever were made to ascertain the quantities of earth and rock, and the estimates had no basis whatever to rest upon. One K. bid $1.62½ per yard for earth and two cents per yard for rock excavation, and taking the quantities estimated his bid was the

lowest; the contract was thereupon let to him. K. performed his contract, and there was found to be 20,576 cubic yards of earth and 9,241 of rock excavation. With these quantities K's bid was the highest but one, and he was paid nearly twice the amount of his aggregate bid. It appeared that the full and fair value of rock excavation was $1.70 per cubic yard and for earth thirty cents. *Held* (RUGER, Ch. J., ANDREWS and GRAY, JJ., dissenting), that the facts showed substantial error in letting the contract; that as the city ordinance, requiring the quantities of each kind of material to be stated as near as possible, was in no sense complied with, there was no basis for a valid contract; also, that it was a just inference from the facts that the contract was the result of fraud and collusion.

*In re N. Y. P. E. P. School* (75 N. Y. 324) distinguished.

*It seems* that an unbalanced bid is not *per se* fraudulent or evidence of substantial error; if it does not materially enhance the aggregate cost of the work, or if there is no deception or mistake in the quantities and the ordinance has fairly been complied with, it cannot be complained of.

(Argued April 24, 1888; decided June 5, 1888.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made January 22, 1888, which affirmed an order of Special Term reducing an assessment upon the lots of petitioner for regulating and grading Fourth avenue in the city of New York. (Reported below, 47 Hun, 203.)

The material facts are stated in the opinion.

*D. J. Dean* for appellant. The city officials complied with the law in letting the contract for the improvement in question. (Laws of 1873, chap. 335, § 9 ; Rev. Ord., 1880, 117; id. 1866, 189, § 17; *In re Merriam,* 84 N. Y. 596; *In re Mahan,* 20 Hun, 301 ; *In re Met. G. L. Co.,* 85 N. Y. 529; Laws of 1861, chap. 308 ; *Baird* v. *Mayor, etc.,* 83 N. Y. 254 ; Laws of 1873, chap. 335, § 95 ; *Outwater* v. *Green,* 56 N. Y. 475; *Williams* v. *Dayton,* 55 id. 367.) The lowest bidder in this case must have been determined by data before the commissioner at the time when the bids were opened ; that is by multiplying the surveyor's estimate by the price bid. (Chap. 335, § 91, Laws of 1873; chap. 308, Laws of 1861; Rev. Ord. 1866, 187; id. 1880, 117; *Vickerman*

v. *Contracting Board,* 46 Barb. 254; *In re Protestant Episcopal Public School,* 58 id. 161; *Baird* v. *Mayor, etc.,* 83 N. Y. 254.) Except on proof of actual fraud, there was at the time this contract was made no protection against a bid of the character made. (*In re Protestant Episcopal School,* 75 N. Y. 324; *In re Marsh,* 83 id. 431.) The manner of ascertaining the quantity of work to be done having been prescribed by the authorities in the exercise of a *quasi* judicial power, the city should not suffer loss if this manner should prove to be insufficient in one case. (*Griffin* v. *Mayor, etc.,* 9 N. Y. 456; *Urquhart* v. *City of Ogdensburg,* 91 id. 67, 71; *Cain* v. *City of Syracuse,* 95 id. 83; *Saulsbury* v. *Village of Ithaca,* 94 id. 27; *Mills* v. *Brooklyn,* 32 id. 489; *Wilson* v. *Mayor, etc.,* 1 Den. 595; *City of Terre Haute* v. *Hudnut* [Ind. Sup. Ct., Nov. 1, 1887], Alb. L. Jour. of March 10, 1888, 199.)

*Truman H. Baldwin* for respondent. As a fictitious work was advertised, bid and contracted for, the contract was invalid. (Charter of 1873, Laws of 1873, chap. 335, § 91; Revised Ord. of 1880, 56, § 7; Id. 116, 117; Id. 1886, 189; *Brady* v. *Mayor, etc.,* 20 N. Y. 312, 318; *Appleby* v. *Mayor, etc.,* 15 How. Pr. 428.) The contract, having been made in direct violation of law, cannot be enforced, and the plaintiff, as a taxpayer, has a clear right to invoke the aid of this court to restrain its execution or the payment of any money out of the city treasury on account thereof. (*In re Marsh,* 83 N. Y. 431; *Baird* v. *Mayor, etc.,* 38 id. 254; *Appleby* v. *Mayor, etc.,* 15 How. Pr. 428; Bliss, Olney & Whitney's Compilation Laws of New York City, 645.) The error in the proposals was a substantial one. (*Brady* v. *Mayor, etc.,* 20 N. Y. 312; 2 Bosw. 173; *Appleby* v. *Mayor, etc.,* 15 How. Pr. 428; *In re Em. Ind. Savings Bank,* 75 N. Y. 338; *In re P. E. Pub. School,* 75 id. 324; *In re Walter,* 76 id. 354; *In re Merriam,* 84 id. 596, 610; Consolidation act of 1882, §§ 898, 903.) The assessment commission had no jurisdiction. (Laws of 1880, chap. 550, §§ 1, 2.)

EARL, J.    This proceeding was instituted for the purpose of reducing an assessment for the expense of regulating and grading a portion of Fourth avenue, in the city of New York.    The petitioner bases his right to relief under section 12, chapter 550, Laws of 1880, on the ground of fraud or substantial error in the proceedings which resulted in the assessment.

Under the Laws of 1873, chapter 335, section 91, all contracts for work to be done in the city of New York, which involved an expenditure of more than $1,000, were to be let to the lowest bidder, under such regulations as should be established by ordinance of the common council; and it was established by ordinances that the commissioner of public works should issue proposals and advertise for bids for all contracts exceeding $1,000, connected with his department; that whenever a survey or plans should be necessary for any work duly authorized, he should cause such survey or plans to be made by a competent surveyor, architect or engineer, as the nature of the work might require; that the several departments and officers employed by law to make contracts on the part of the corporation should issue proposals for estimates therefor, and advertise the same as required by law; and that such advertisement should state the quantity and quality of supplies, or the nature and extent, as near as possible, of the work required.

The following estimates of the work to be done was contained in the proposals submitted to the bidders for the work in question: 10,000 cubic yards of earth excavation; 20,000 cubic yards of rock excavation.   There were twenty-six bids for the work, and the contract was awarded to one Kane as the lowest bidder.   He bid for earth excavation $1.62½ per yard, and for rock excavation two cents per yard; and applying these bids to the estimated amounts of excavation, he was the lowest of all the bidders — the aggregate of his bid being $17,100, and the other bids ranging from $19,300, the next lowest bid, to $58,500, the highest.   Kane performed the work under the contract, and there was found to be 20,576

cubic yards of earth excavation and 9,241 cubic yards of rock excavation, and it turned out that, instead of being the lowest bidder, he was the highest but one; and he was paid for the work the aggregate sum of $33,620, nearly twice as much as the amount of his aggregate bid. There was proof at the hearing that the full and fair value for the rock excavation was $1.70 per cubic yard, and for earth excavation, thirty cents per cubic yard, and that those prices would allow from twenty-five to thirty per cent clear profit to the contractor. Thus it appears that there was actually paid, in excess of a fair value for the work done by Kane, the sum of nearly $12,000.

We think there was substantial error in letting this contract to Kane, who was, in fact, nearly the highest instead of the lowest bidder for the work. No tests whatever were made before letting the work to ascertain the quantities of rock and earth, respectively, to be excavated, and no appropriation of money or other provision was made for making such tests. The quantities of rock and earth respectively, as stated in the advertisement, were mere estimates or random guesses without any basis whatever to rest upon; and the ordinance which required the quantity of each kind of material and its nature to be stated, as near as possible, was in no sense complied with, and therefore there was no basis for a valid contract. The case would be different if a *bona fide* effort had been made to comply with the ordinance, and there had been a mistake or error as to the quantities of different kinds of materials to be excavated.

We are also of opinion that upon the facts of the case it is a just inference that the contract was the result of fraud and collusion. Fraud is suggested by the careless and reckless way in which the estimates were made, without any adequate test or examination to ascertain the quantity or character of the different kinds of materials. An estimate of the quantity of rock at more than double the actual quantity, and the amount of earth at less than half the actual quantity, taken in connection with Kane's extraordinary unbalanced bid, could

hardly have been the result of accident.   The bid on its face is suggestive of fraud.   The officers of the city, when they saw in the bid two cents per cubic yard for rock excavation, and $1.62½ for earth excavation, ought to have known, and must have known if they read it, that some fraud was contemplated ; and it may be inferred that when the contract was let there was actual fraud and collusion between the bidder and the representatives of the city, as the city could not have been compelled to enter into contract upon such a bid.   It is not needful, however, for us to find that there was actual fraud, but it is sufficient that all the facts of the case were such as justified an inference of fraud in the court below.

The case of *Protestant Episcopal Public School* (75 N. Y. 324) is not an authority for the city in this case.   We do not hold that every unbalanced bid is *per se* fraudulent, or evidence of substantial error.   An unbalanced bid that does not materially enhance the aggregate cost of the work cannot be complained of.   If there is no deception or mistake as to the quantities, and if the ordinances have fairly been complied with, and the quantity and quality of the work has been estimated as nearly as practical, there is no ground for alleging substantial error merely because of an unbalanced bid under which the contract was let.   And if the cost of the work has not thereby been enhanced, there is no ground for alleging fraud.   In the case cited it had been determined that the contract was free from fraud.   The case of *Brady* v. *Mayor, etc.* (20 N. Y. 312) is not a precise authority for the petitioner, but the grounds of the decision are sufficient to sustain his contention.

The petitioner has a strong equity for the reduction of this assessment.   He has had no benefit whatever from the excessive amount paid to the contractor, and there is no reason why that amount should fall upon him or his lots.   The city, in making street improvements, the expense of which is to be charged to the owners of property in the vicinity of the improvements, acts in some sense as the agent of such owners in making the improvements (*Lake* v. *Trustees of Williamsburgh*, 4 Denio, 520), and it should, in the discharge of its

assumed agency, be required to exercise reasonable care and diligence in connection with the work. If, by gross negligence on the part of the city or the fraud of its officers, the expense of the work has been largely and unnecessarily increased, it is certainly unjust that the consequences of the wrong should be visited wholly upon the owners of the property in the vicinity of the improvement. It is just in a case like this that the excessive and unnecessary expense should be borne by the whole body of taxpayers of the city instead of being cast upon a few lot owners.

We are, therefore, of opinion that the order should be affirmed, with costs.

GRAY, J. (dissenting). The petitioner does not allege any fraud, nor was any shown to exist from the proofs. The city advertised for bids for the work, stating in its proposals an amount of earth excavation and of rock excavation, which, in the proposals, was announced to be as approximate only; and there was no reservation other than of the right to reject any or all bids, which the commissioner of public works might deem prejudicial to the public interests.

The petitioner alleges that the estimates for bids, which were advertised, were not "approximate estimates," nor were they such estimates, "as near as possible, of the work required." He says the estimates were fictitious. If they were, such character must be an inference from the result to the contractor who received the contract and did the work. It is conceded that chapter 335, Laws of 1873, section 91, controls. By that statute "all contracts * * * shall be made by the appropriate heads of departments under such regulations as now exist or shall be established by ordinances of the common council." It further provides that "whenever any work * * * shall involve the expenditure of more than $1,000, the same shall be by contract * * * and all such contracts shall be given to the lowest bidder," etc. The Revised Ordinances of 1880 provide these regulations, viz.:

"Section 3. The proposals for estimates shall be in such form

as may be prescribed by the department making the same, and shall contain the following particulars :   *   *   *   .

Section 2. They shall state the quantity and quality of supplies, or the nature and extent, as near as possible, of the work required."

It seems from the proofs in the case that the city's engineer was mistaken in his estimates of the amount of rock and of earth in the work advertised for.   Because of his erroneous estimates the petitioner seems to base thereupon a conclusion that there was a violation of the law, inasmuch as true and reasonably correct estimates were not made.   I am not able to agree in the correctness of his conclusions or in his construction of the law.   The statute does not demand exactness in the estimates contained in the proposals for bids; but only that the contracts shall be made under such regulations as shall be established by the ordinance of the common council.   That ordinance, as we have seen, requires that the proposals for estimates shall state the nature and extent, " as near as possible, of the work required."   In the absence of fraud or collusion, we must hold that the presumption exists that the public officers perform their duty.   The circumstances of this case are not such as to warrant the presumption of any fraud in the contract which the city made for the work in question. The most that could be contended for as evidencing fraud would be the error in the estimates of the city's engineer and the advantage to the contractor in the result.   We need not enter upon any discussion as to the difficulties in procuring exact estimates for a work of excavation to be done under a contract, whether they arise from the geological formation of the land or in the selection of engineers most competent to make the survey.   The fact remains that a survey was made ; that estimates were given which were announced to be as nearly correct as possible, and that there is no pretense of any fraud entering into the award of the contract.   Superior knowledge in the bidder for this work, as to the formation of New York island at that part, and a wrong estimate of the

city's engineer, may have combined to make this a more expensive contract for the improvement than it might have been if the amount of rock had been definitely known; but so long as the law was obeyed in its requirements, substantially and in good faith, the courts should not interfere. The object of the statute and of the ordinance was to invite competition for work, and to secure its performance for the lowest price which fair competition would produce. So far as we are able to see, in this case fair competion was invited. The object of chapter 383, Laws of 1870, was to give to the court jurisdiction to modify an assessment only when the expense of a local improvement had been *unlawfully* increased. (*Matter of Metropolitan Gas Co.*, 85 N. Y. 526.)

Various plans have been tried in order to arrive at as just and exact results as possible; but none thus far have received the approval of this court, and some have been condemned as illegal. Under the law as it stood, where the provisions thereof had been complied with, the contract vested in the lowest bidder. This court held in *Baird* v. *Mayor, etc.* (83 N. Y. 254), that under the law of 1861, such was the effect of advertising for contracts under its provisions, and, in view of the parity of the language of the act of 1873, the same construction should be given to the later act. In the *Matter of Merriam* (84 N. Y. 596), where the commissioner of public works fixed a price for rock excavation and did not submit that item of the work to public competition, it was held, in reference to the statute of 1873 and the ordinance which I have cited, MILLER, J., delivering the opinion of the court, that they were "intended to establish a system by which work done for and supplies furnished to the city should be the subject of competition and allotted to the lowest bidder for the same; and a substantial compliance with these requirements is essential to carry into effect the object of these regulations, which evidently were adopted to prevent a wasteful expenditure of the public money and to promote economy as well as practical convenience in the administration of the financial affairs of the city. The statute does not provide

specifically as to the terms of the contract, and the ordinance only for quality and quantity as near as can reasonably be furnished." The learned judge then mentions the appellants' claim, that to state in the proposal certain prices for certain items was not to destroy competition, and that it would be exceedingly difficult to ascertain beforehand the quantity of rock excavation so as to make an estimate sufficiently correct to carry out the purpose of letting the contract to the lowest bidder, and says: " These suggestions are not without force, and while there is strong ground for claiming that when the price fixed for one or more items is fair and reasonable, and there is no evidence of fraud or extravagance, and the quantity could not be ascertained without a considerable expenditure of money, and that this could be done in some instances consistently with the interests of the public in view, and with the statute and ordinances, we are, upon the whole, of the opinion that, to carry out the intention of the law to award contracts to the lowest bidder, it is requisite that the quantity of rock excavation, as near as possible, should be stated in the proposals, and that fixing the price for the same was in disregard of the law and a violation of the statute and the ordinance of the city, which is cited."

The case of *Brady* v. *Mayor, etc.* (20 N. Y. 312), is not opposed to the view to which we give our support, that the contract vests in the lowest bidder by force of the law where the law's provisions have been complied with, and no fraud or collusion is shown. In that case it was so arranged, in inviting proposals, that there was not to be any competition as to the rock excavation, but such was to be paid for at such price as the bidder chose to insert in his proposal, provided that as to the other comparatively inconsiderable portion of the work he bid lower than any one else. It was there held, that the law was violated, inasmuch as by the arrangement in question, public competition was not secured for all the work. That case is an authority requiring that all work to be performed for the city should be subjected to public competition in order to preclude favoritism and jobbing.

I fail to see the right or the justice in imposing upon the city at large the burden of the expense for the local improvement, or any portion of it, where the contract for doing it was awarded under the provisions of the law, and it is not alleged or shown that it was influenced by any fraud or collusion.

I am, therefore, of the opinion that the orders of the General Term and of the Special Term should be reversed, and the petition dismissed.

DANFORTH, FINCH and PECKHAM, JJ., concur with EARL, J., for affirmance; RUGER, Ch. J., and ANDREWS, J., with GRAY, J., for reversal.

Order affirmed.