BROOKLYN ASH REMOVAL COMPANY, INC., Appellant, *v.* JOHN P. O'BRIEN and Others, Composing the Board of Estimate and Apportionment of the City of New York, and Others, Respondents.

JOHN T. BRADY & Co., Appellant, *v.* JOHN P. O'BRIEN and Others, Composing the Board of Estimate and Apportionment of the City of New York, and Others, Respondents.

GEORGE CARRIZZO, Appellant, *v.* JOHN P. O'BRIEN and Others, Composing the Board of Estimate and Apportionment of the City of New York, and Others, Respondents.

First Department, June 20, 1933.

*Samuel Seabury* of counsel [*George Trosk* with him on the brief; *Samuel Seabury*, attorney], for the appellant Brooklyn Ash Removal Company, Inc.

*Samuel Untermyer* of counsel [*Abraham Shamos* with him on the brief; *Guggenheimer & Untermyer*, attorneys], for the appellant John T. Brady & Co.

*Lewis Landes* of counsel [*Oscar A. Lewis* with him on the brief; *Lewis Landes*, attorney], for the appellant George Carrizzo.

*Arthur J. W. Hilly* of counsel [*Matthew J. Troy* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the respondents other than Manhattan Ash and Garbage Removal Corporation and John T. Brady & Co.

*Bainbridge Colby* of counsel [*Jacob I. Goodstein* and *Edgar A. Pollack* with him on the brief; *Jacob I. Goodstein*, attorney], for the respondent Manhattan Ash and Garbage Removal Corporation.

GLENNON, J. The plaintiff Brooklyn Ash Removal Company, Inc., brought its action as a taxpayer to restrain the defendants from entering into a contract with the Manhattan Ash and Garbage Removal Corporation for the reception and final disposition of garbage, ashes, street sweepings and rubbish in the borough of Brooklyn for a period of five years upon the ground that the execution thereof would constitute an illegal act on the part of the defendants and a waste of public money.

Shortly before, George Carrizzo, and, about the time this suit was commenced, John T. Brady & Co., as taxpayers, instituted actions for similar relief. The motions for temporary injunctions in the three actions were heard at the same time in the court below and were denied. The opinion at Special Term was written in the Carrizzo case and applied to the companion actions.

For ten days, commencing March 16, 1933, the city of New York advertised for bids for a contract pursuant to section 544 of the Greater New York Charter. One of the terms of the proposal for bids reads as follows: " This contract shall begin on the first day of April, 1933, and shall continue in operation for a period of five years from said date, and shall expire at midnight on the thirty-first day of March, 1938."

The bids received by the city were opened on March 27, 1933. Only two were submitted, one by the plaintiff Brooklyn Ash Removal Company, Inc., and the other by the defendant Manhattan Ash and Garbage Removal Corporation.

It will be noted that the successful bidder was required to commence operations under the contract four days after the sealed bids were opened. No contract was entered into on the 1st day of April, 1933. The resolution to authorize the department of sanitation to award the contract to defendant Manhattan Ash and Garbage Removal Corporation on the theory that it was the lowest bidder, did not appear on the calendar of the board of estimate and apportionment until April 21, 1933. On the call of the calendar on that day, the commissioner of sanitation made an application for an adjournment of one week for the purpose of familiarizing

himself with the terms of the contract. The application was granted and the matter was set over until April 28, 1933. The difficulty is that the contract which was about to be awarded is not the one advertised.

The preliminary injunction in the Carrizzo case was not obtained until April 20, 1933. It cannot be claimed, therefore, that the plaintiffs in these actions were responsible for the delay in the execution of the contract.

In *O'Malley* v. *Hoboken* (84 N. J. L. 83) Mr. Justice TRENCHARD, writing for the unanimous court, said: " The contract awarded was for a term of five years beginning December 15, 1911, while the advertisement called for proposals for a term beginning September 25, 1911. Such a contract must be set aside. It is not necessary to hold, and we do not hold, that under *Pamph. L.* 1902, *p. 200*, it was necessary in the call for proposals to designate the beginning of the term. What we do hold is that such designation being made, the advertisement will not support an award of a contract for a different term."

It must be borne in mind that the bids were opened on March 27, 1933. If John T. Brady & Co. and others who might have been in a position to submit a bid had had knowledge that the contract was not to be entered into on April 1, 1933, a different situation undoubtedly would have obtained — a situation which would have been advantageous to the city. It was necessary for the bidder to be prepared to commence operations within four days after the bids were opened. There was only one company, apparently, in a position to carry out a contract similar to the one in suit, and that company was the Brooklyn Ash Removal Company, Inc., the unsuccessful bidder.

It is manifest that the defendant Manhattan Ash and Garbage Removal Corporation was not ready on the 1st of April, 1933, to enter into the performance of the contract. It would need to have on hand a force of approximately one thousand employees who should be familiar with the work of the character contemplated. Large and expensive equipment consisting of receiving stations, inland dumps, water front dumps, railroad trackage, scows, specially designed railroad cars, locomotives, dump cars, unloading cranes, tractors, automobiles and trucks were required. The period of time between March twenty-seventh, the day the bids were opened, and the date upon which the work under the contract was to commence was so short that it precluded any person with the possible exception of the Brooklyn Ash Removal Company from being in a position to carry out the provisions of the contract.

Furthermore, the specifications as advertised are so indefinite and uncertain that any contract awarded pursuant thereto would be invalid. Paragraph 12 of the proposal for bids under the topic " Description of methods to be furnished by the bidders," reads in part as follows: " 12. Each bidder, when required by the Sanitary Commission or the Board of Estimate and in any event before the award of the contract, must submit a statement containing a complete description of the methods to be used by him in performing the work required to be done under this contract, with specifications setting forth such methods in detail and containing a reference to any patent or patent rights, or patented articles, which the Contractor intends to use. Such statement to the extent that it shall be approved by the Board of Estimate and Apportionment shall be and be deemed incorporated into the contract and specifications as supplementing and complementing the same."

A similar situation was considered in *Hart* v. *City of New York* (201 N. Y. 45). HISCOCK, J., said (at p. 53): " In fact, unless the requirement of the statute for specifications as a basis for competitive bidding on an important and expensive municipal enterprise like this is satisfied by a mere summary of the general results to be accomplished as evidenced by a testing period, the specifications in question were not sufficient. It seems clear that such purported specifications cannot possibly furnish the basis for real competitive bids which may be subjected to an intelligent and uniform test for the purpose of determining which is the lowest, and, therefore, within the terms of the statute. (*Gage* v. *City of N. Y.,* 110 App. Div. 403; *Matter of Anderson,* 109 N. Y. 554, 558; *Ricketson* v. *City of Milwaukee,* 105 Wis. 591; *Fones Hardware Co.* v. *Erb,* 54 Ark. 645; *Ertle* v. *Leary,* 114 Cal. 238; *Packard* v. *Hayes,* 94 Md. 233; *Barber Asphalt Pav. Co.* v. *O'Brien,* 128 Mo. App. 267; *Mazet* v. *City of Pittsburgh,* 137 Penn. St. 548.)"

About the only thing which is stated clearly in the specifications of the proposed contract is that the successful bidder will be required to dispose of all refuse from the borough of Brooklyn for a period of five years from April 1, 1933. Many of the things which the contractor would be required to do were left either for future determination or to the discretion of public officials. The tendency naturally was to restrict competition in bidding.

It seems clear, therefore, since no contract was entered into on the 1st of April, 1933, and the time between the opening of bids and the date specified for the awarding of the contract was so short, coupled with the fact that the specifications are indefinite, that the threatened act in this case is such as " to imperil the public interests, or calcu-

lated to work public injury or produce some public mischief" within the meaning of *Altschul* v. *Ludwig* (216 N. Y. 459).

The orders should be reversed, with twenty dollars costs and disbursements to the appellants, and the motions granted, with ten dollars costs.

FINCH, P. J., MARTIN, O'MALLEY and TOWNLEY, JJ., concur.

In each case: Order reversed, with twenty dollars costs and disbursements, and motion granted, with ten dollars costs. Settle order on notice.