CHARLES HART, Appellant, v. THE CITY OF NEW YORK,
Respondent.

Municipal contract — New York (city of) — when contract for
construction of sewer and sewage disposal plant invalid and
unenforceable because plans and specifications are too indefinite
— when certificates of performance and completion of work
binding on city — improper use of sewer before completion —
liability of city for extra work caused thereby.

Where the city of New York advertised for proposals for a disposal
plant to be constructed in connection with a sewer and, subject to a
few general specifications, the invited bidder was allowed in effect to
select any method of sewage disposal, and construct, locate and arrange
buildings and appurtenances, such as tanks for sedimentation, filtering,
pipes and valves, foundations, engines, boilers, etc., according to any
system he desired and according to plans and specifications, to be
submitted by him with his bid, held that the specifications were not
sufficiently definite to comply with the provisions of law and to make
a bid and a contract, entered into in response thereto, legal under an
ordinance enacted pursuant to sections 401 and 419 of the charter of the
city, which requires that such proposals shall state the quantity and
quality of supplies or the nature and extent, as near as possible, of the
work required.

This is not a case where there has been mere irregularity in letting the
contract, but is a case where the municipal authorities have attempted
to let a contract which was not only not authorized, but which was in
violation of the law and ordinances which governed them and which
was utterly and jurisdictionally illegal. The action is explicitly based
on contract and not brought to recover on a quantum meruit, and it is
well settled that it cannot be maintained simply because the contract
has been executed.

When a contract with a municipality contains the usual provisions for
certificates by its officers of the performance and completion by the con-
tractor of the contract, and that he is entitled to pay therefor, such
certificate is conclusive on the municipality in the absence of fraud or
mistake where the provision relating to the completion of the work
is ambiguous and the evidence with reference thereto is indefinite and
contradictory.

Questions as to alleged misleading statements in the plans of the work
upon which plaintiff based his bid considered, and held, that defendant
should, in cases where the data were not explicit, have made inquiry
with reference thereto.

Although there was but one instrument which contained the agreement for building both the sewage disposal plant and the construction of a sewer, the contract may be held to be invalid as to one and valid as to the other. (*Uvalde Asphalt Paving Co.* v. *City of New York,* 128 App. Div. 210; affd. 198 N. Y. 548, followed.)

The city connected its sewer system with the sewer in process of construction and put it in use, resulting in expense to the contractor for removal of sediment and dirt deposited thereby. *Held,* that such use of the sewer was not within the terms of the contract which gave the right to the city to connect such sewers.

*Hart* v. *City of New York,* 139 App. Div. 901, modified.

(Argued December 15, 1910; decided February 7, 1911.)

APPEAL from a judgment, entered July 15, 1910, upon an order of the Appellate Division of the Supreme Court in the first judicial department overruling plaintiff's exceptions, ordered to be held in the first instance by the Appellate Division, denying a motion for a new trial and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*L. Laflin Kellogg, Frank H. Edmunds* and *Alfred C. Petté* for appellant. The certificates given by the defendant's officers and agents were by the express terms of the contract, in the absence of fraud or mistake and of this there was no proof, conclusive on the question of performance and entitled the plaintiff to the direction of a verdict for the amount certified therein as due for work performed under the contract. It was, therefore, error to dismiss the complaint. (*Sweet* v. *Morrison,* 116 N. Y. 19; *Wyckoff* v. *Meyers,* 44 N. Y. 143; *Smith* v. *Mayor, etc.,* 12 App. Div. 391; *N. Y. B. Co.* v. *S. E. Co.,* 56 App. Div. 294; *Snyder* v. *City of New York,* 74 App. Div. 421; *Brady* v. *Mayor, etc.,* 132 N. Y. 430; *Quinn* v. *Mayor, etc.,* 16 App. Div. 409.) The contract entered into between the parties was perfectly legal and in no way violated the sections of the Greater New York charter. (*Warren Bros.* v. *City of New York,* 190 N. Y. 297; *Holly* v. *City of New York,*

128 App. Div. 499 ; 1 Dillon on Mun. Corp. § 468 ;
*Atty.-Gen.* v. *City of Detroit*, 26 Mich. 262 ; *Mayor*
v. *Bonnell*, 57 N. J. L. 424 ; *Ryan* v. *Patterson*, 66
N. J. L. 351; *Bye* v. *Atlantic City*, 64 Atl. Rep. 1056 ;
*Silsby Mfg. Co.* v. *Allentown*, 153 Penn. St. 319 ; *Schuck* v.
*Reading*, 186 Penn. St. 248; *Hastings* v. *Columbus*, 42 Ohio
St. 585 ; *Trapp* v. *City of Newport*, 115 Ky. 840 ; *Ex parte
City of Paducah*, 89 S. W. Rep. 302.)   The trial judge was
not legally authorized under the facts proved in this case to
dismiss the complaint upon the ground that the plaintiff had
failed to show that the disposal plant was not so designed and
constructed as to treat 50,000 gallons of sewage in twenty-
four hours independent of the rest of the plant.   (*Dean* v.
*Mayor, etc.*, 167 N. Y. 13 ; *Gilligan* v. *Brown*, 116 Cal.
554.)   The taking possession of and the user by the city of
the completed work was of itself sufficient evidence to justify
a finding by the jury that the work as performed was com-
plete under the contract.   (*Smith* v. *Alker*, 102 N. Y. 87 ;
*Brown* v. *Foster*, 108 N. Y. 388 ; *O. I. Co.* v. *Roach*, 117
N. Y. 528 ; *Chambers* v. *Lancaster*, 3 App. Div. 215 ; *Wiles*
v. *Provost*, 6 App. Div. 1 ; *Ellison* v. *Creed*, 34 App. Div.
15 ; *City of St. Charles* v. *Stookey*, 154 Fed. Rep. 772 ;
*Oberlies* v. *Bullinger*, 132 N. Y. 598 ; *Desmond Co.* v. *Fried-
man Co.*, 16 App. Div. 141 ; *Murphy* v. *Stickley, Simonds
Co.*, 82 Hun, 158 ; *D'Andre* v. *Zimmerman*, 17 Misc. Rep.
357.)   The court erred in refusing to allow the plaintiff to go
to the jury on the items for additional work and increased
cost.   (*Horgan* v. *Mayor, etc.*, 160 N. Y. 516 ; *Langley*
v. *Rouss*, 85 App. Div. 27, 30 ; *Dwyer* v. *City of New
York*, 77 App. Div. 224; *Lentilhon* v. *City of New
York*, 102 App. Div. 548; *Leahy* v. *City of New York*,
192 N. Y. 42; *Curnan* v. *D. & O. R. R. Co.*, 138 N. Y.
480.)

   *Archibald R. Watson, Corporation Counsel* (*Terence Far-
ley* and *Theodore Connoly* of counsel), for respondent.   The
contract in controversy is clearly illegal.   (*U. A. P. Co.* v.

*City of New York*, 128 App. Div. 210; 198 N. Y. 548; *Bigler* v. *Mayor, etc.*, 5 Abb. N. C. 51; *Delafield* v. *Village of Westfield*, 41 App. Div. 24; 169 N. Y. 582; *Gage* v. *City of New York*, 110 App. Div. 403; *Cahn* v. *Metz*, 115 App. Div. 516; *Matter of M. & C. D. Co.*, 116 App. Div. 257; 193 N. Y. 678; *People ex rel. Bullard* v. *Contracting Board*, 33 Barb. 510; 33 N. Y. 382; *Brady* v. *Mayor, etc.*, 20 N. Y. 312; *Matter of Eager*, 46 N. Y. 100; *Smith* v. *Syracuse Improvement Co.*, 161 N. Y. 484.) Charter requirements as to competitive bidding are mandatory and not directory, and a failure to comply with them will render any contract, otherwise good, void and, therefore, incapable of enforcement. (*McDonald* v. *Mayor, etc.*, 68 N. Y. 23; *Parr* v. *Village of Greenbush*, 72 N. Y. 463; *Village of Ft. Edward* v. *Fish*, 156 N. Y. 363; *People ex rel. R. P. Co.* v. *Board of Improvement*, 43 N. Y. 227; *Matter of Merriam*, 84 N. Y. 596; *Matter of Anderson*, 109 N. Y. 554.) Under the terms of the contract there is no responsibility for the increased cost and additional work alleged. (*People ex rel. McCabe* v. *Snedeker*, 106 App. Div. 89; 182 N. Y. 558; *Langley* v. *Rouss*, 185 N. Y. 201; *Lentilhon* v. *City of New York*, 102 App. Div. 548; 185 N. Y. 549; *Sullivan* v. *Village of Sing Sing*, 122 N. Y. 389; *Dwyer* v. *Mayor, etc.*, 77 App. Div. 224.)

HISCOCK, J. This action was brought to recover a balance alleged to be due to the appellant under a contract for the construction of a sewer and of a sewage disposal plant in the borough of Queens, and also several thousand dollars for extra labor and material which he alleges he was compelled to do and furnish "in order to carry out and perform the terms of said contract, by reason of the wrongful acts, neglect, fault and omissions of the defendant, by changes of plans and in various other ways, and under the orders and directions of the defendant." These last items of work and material are claimed to be "in excess of that covered by the terms of the contract and necessary for the efficiency of the work required to be

done and in order to properly perform the same, all of which was done as directed by the defendant."

In alleged competition with four others plaintiff bid upon and thereafter entered into a contract for the construction of the sewer and sewage disposal plant under discussion for the sum of $181,850, and of which amount the sum of $90,000 was to cover the disposal plant. As I understand it, the amounts were bid separately for the respective pieces of work. It is alleged, and in the case of the sewer is undisputed, that the plaintiff completed the sewer and disposal plant and thereafter received certificates from the proper officials of defendant to the effect that he had earned under the terms of his contract the sum of $194,550.59, and that he has received only the sum of $160,902.90. Outside of the items for extra services and materials above referred to and hereafter to be discussed by themselves, there seems to have been no dispute between the parties under the contract relating to the sewer, but the controversy arises concerning the sewage disposal plant, and it is assumed that if the plaintiff is not entitled to collect under the contract for work done and materials furnished in erecting the latter he has been paid all that he is entitled to for the construction of the sewer, and on that branch of the case would be entitled to no further recovery.

Two substantial reasons are urged why he is not entitled to collect under his contract for construction of the disposal plant. These are :

*First,* that the contract for the erection of said plant was illegal and void because the proposals for bids did not sufficiently specify the work to be done and materials to be furnished so as to afford a basis for competitive bidding and thus comply with the provisions of defendant's charter.

*Second,* that plaintiff did not so perform his contract, assuming it to be valid, as to entitle him to collect compensation.

I shall consider these two questions in the order stated.

Plaintiff entered into a contract for the construction of both sewer and the disposal plant. So far as his rights to compensation for the latter are concerned, I do not see that it makes

4

any difference whether the contract be treated as one entire one or as composed of two divisible and, separate parts. In either case, if the provisions relative to the construction of the disposal plant are illegal and invalid, plaintiff cannot recover for that whatever may be the case with reference to some of the items for extra work herein to be discussed.

The first instrument or notice issued in behalf of the defendant after it was determined to do the work in question was directed "To contractors" and headed "Proposals for sewer," and it commences as follows: "Sewer in Broadway. * * * in the Borough of Queens, also the erection of a Disposal Plant in connection with the same. * * * Sealed bids or estimates for the above work * * * will be received at the office of the Department of Sewers * * * and the award of the contract, if awarded, will be made to the lowest bidder."

This paper then further states: "The following is a statement based upon estimates of the Engineer, of the quantity and quality, and the nature and extent, as near as possible, of the work required; and the several bids will be tested by the quantities and qualities mentioned in such statement." Then follow several items relating to the sewer, which need not be quoted, and these are followed by the concluding item: "One Sewage Disposal Plant complete in every detail, as per accompanying specifications and those given in the proposal, including the operation of the Sewage Disposal Plant for M. H. W. (six) months, and the tests connected therewith."

This proposal was followed by or contained what is entitled "Data relating to the Disposal Plant to be Constructed in Connection with the Sewer in Broadway * * * in the Borough of Queens." These data are the only specifications given by the municipal authorities of the work to be done and materials to be furnished in the construction of this plant. I do not understand that there is any dispute that if they do not furnish the basis for the necessary competitive bids, considering the nature of the work to be done, which are required by the charter, then this branch of the contract is invalid.

These so-called data are so extended that it is out of the question to quote from them in detail. I think, however, that they may be fairly summarized in the statement that the only substantial definite specifications which they contain for the proposed plant are as follows: The plant was to be erected on a given piece of land; the building containing tanks, etc., was to be built of brick; there were to be a cer- tain number of square yards of surface of filter beds, if used, for each one thousand gallons of sewage to be treated per day; the capacity of the plant was to be one million gallons of sewage in twenty-four hours and it was to be so subdivided as to be "capable of treating fifty thousand (50,000) gallons of sewage in twenty-four (24) hours * * * independent of the rest of the plant" excepting boilers, etc.; the composition of the effluent discharged into the creek which was to be utilized in the operation of the plant was fixed. Outside of these specifications which were definite, the invited bidder was allowed in effect to select any method of sewage disposal, and construct, locate and arrange build- ings, appurtenances, such as tanks for sedimentation, filtering pipes and valves, foundations, engines, boilers, etc., according to any system he desired and according to plans and specifica- tions to be submitted by him with his bid.

It is apparent from this general statement how indefinite was the description of the work to be done, and how practi- cally impossible it was for bidders to compete with one another on a common basis of work to be done and materials fur- nished, and how open to the discretion and judgment of the municipal officers it was to determine which was the lowest bid. As stated, the question is whether the proposal and the specifications were sufficiently definite to comply with the provisions of law and to make a bid and a contract entered into in response thereto legal. I do not think that they were.

Section 401 of the Greater New York charter, in force at the time, provided that "Power and authority to construct and erect and maintain sewage disposal works and plants and

the necessary appurtenances thereto in the City of New York is hereby granted to the same authorities as the power to construct sewers and appurtenances is granted, such construction and erection and maintenance to be done under and pursuant to and in compliance with the same laws and regulations as apply to the construction and maintenance of sewers and appurtenances thereto."

Section 419 of the charter provides that "All contracts to be made or let for work to be done or supplies to be furnished, * * * shall be made * * * under such regulations as shall be established by ordinance or resolution of the board of aldermen." It further provides that all contracts involving more than one thousand dollars shall be founded on sealed bids or proposals and shall be awarded to the lowest bidder. Section 34 of the ordinances and regulations established by the board of aldermen and in force at the time of the making of this contract, provides: "Proposals for estimates shall be in such form as may be prescribed by the department making the same and shall contain the following particulars: * * *

"2. They shall state the quantity and quality of supplies or the nature and extent as near as possible of the work required."

If it be assumed that in the construction of such a plant as this the execution of some minor details would necessarily be left to the judgment and discretion of the contractor, that assumption is not broad enough to save the plaintiff in this case.

It is not claimed, but, on the other hand, by plaintiff's counsel is expressly disclaimed, that any element of patents was involved in the construction of the plant, and, therefore, that reason does not exist for excusing compliance with those requirements of plans and specifications which would govern an ordinary case of competitive bidding, and I am not able to see any special application of the case of *Warren Bros. Co.* v. *City of New York* (190 N. Y. 297), cited by appellant.

Neither does the argument find support in the evidence so far as I can discover that there were various standard systems

of sewage disposal involving such radically divergent theories that bids for installing the same could not be based on a common set of specifications of substantial features. But if it should be assumed that such were the case, it seems to me that the obligation rested on the municipal authorities to do one of two things. Either after proper investigation they should have adopted what seemed the most promising system and made proper specifications for work and materials, or else, assuming but not deciding that it was permissible to call for bids on any one of different systems, plans and specifications should have been prepared applicable to each system upon which bids were to be received. A review of the work and materials to be done and furnished under the present bid makes it clear that many important elements of the construction such as the brick building, boilers and engines, tanks, pipes, etc., might have been covered by specifications very much more in detail than those actually given. In fact, unless the requirement of the statute for specifications as a basis for competitive bidding on an important and expensive municipal enterprise like this is satisfied by a mere summary of the general results to be accomplished as evidenced by a testing period, the specifications in question were not sufficient. It seems clear that such purported specifications cannot possibly furnish the basis for real competitive bids which may be subjected to an intelligent and uniform test for the purpose of determining which is the lowest, and, therefore, within the terms of the statute. (*Gage* v. *City of N. Y.*, 110 App. Div. 403; *Matter of Anderson*, 109 N. Y. 554, 558; *Ricketson* v. *City of Milwaukee*, 105 Wis. 591; *Fones Hardware Co.* v. *Erb*, 54 Ark. 645; *Ertle* v. *Leary*, 114 Cal. 238; *Packard* v. *Hayes*, 94 Md. 233; *Barber Asphalt Pav. Co.* v. *O'Brien*, 128 Mo. App. 267; *Mazet* v. *City of Pittsburgh*, 137 Penn. St. 548.)

The *Ricketson* case seems to be especially applicable. It involved a contract for the erection of a garbage crematory. A statute of the state required an advertisement for such work after "a plan or profile of the work to be done, accompanied

with specifications for doing the same, or other appropriate and sufficient description of the work" had first been placed on file for the information of bidders, etc. As a matter of fact, the contract was let without making or filing any plan or adopting any system of cremation or specifying the dimensions of the building or description of machinery to be used, but merely calling for a complete garbage cremation plant which would destroy a certain quantity of garbage per day, leaving the bidders to submit plans and specifications showing descriptions of buildings, machinery, furnaces and appurtenances. In the course of the opinion the court wrote as follows: "The charter requires that a 'plan or profile of the work to be done' shall first be placed on file in the office of the board of public works. This plan or profile must be accompanied with 'specifications for doing the same, or other appropriate and sufficient description of the work required to be done, and of the kinds and quality of materials to be furnished,' for the information of bidders. Has that been done in this case? It is admitted that no plan of the proposed plant was ever made or filed with the board prior to the call for bids. Indeed, the general specifications adopted required each bidder to submit with their bids 'complete plans and specifications fully showing and describing the buildings, machinery, furnaces and other necessary appurtenances of the entire cremation plant, in detail, with all dimensions given.' This was a plunge in the dark. In a general way such specifications called for the construction of a complete garbage cremation plant capable of destroying not less than 100 tons of garbage per day. No system of garbage cremation was adopted. No dimensions of buildings or description of machinery was given. * * * 'The plant must be complete in every respect' — a result greatly to be hoped for, but left to the judgment of each individual bidder. In fact, the whole scheme was so indefinite, uncertain, and unascertainable as to lead to the very result that followed * * *.

"The indefinite character of the specifications and the

absence of plans had the effect of stifling all competition. Each bidder was called upon to make a proposal, resting largely upon his own judgment, with absolutely no guide as to details. No one could tell which was the lowest bid, because no two would be on the same basis. That fact alone condemns the action taken."

It is, however, urged that the principles which have been stated and referred to do not apply to an executed contract where the municipality has received and is enjoying the benefit of the work done or materials furnished under the contract.

It is very clear that such is not the law applicable to the facts presented here. This is not a case where there has been mere irregularity in letting the contract, but is a case where, if I am correct, the municipal authorities have attempted to let a contract which was not only not authorized, but which was in violation of the law and ordinances which governed them and which was utterly and jurisdictionally illegal. The action is explicitly based on contract and not brought to recover on a *quantum meruit*, and I regard it as well settled that it cannot be maintained simply because the contract has been executed, some of the decisions here cited having reference even to actions based on a *quantum meruit*. (*Brady* v. *Mayor, etc., of N. Y.*, 20 N. Y. 312; *Moore* v. *Mayor, etc., of N. Y.*, 73 N. Y. 238; *Cleveland S. F. Co.* v. *City of Greenville*, 146 Ala. 559; *Hope* v. *City of Alton*, 214 Ill. 102; *Citizens' Bank* v. *City of Spencer*, 126 Iowa, 101; *State ex rel. St. L. U. S. Co.* v. *Murphy*, 134 Mo. 548, 567; *Schneider* v. *City of Menasha*, 118 Wis. 298; *Wormstead* v. *City of Lynn*, 184 Mass. 425.)

Lastly, on this point it seems to be urged that certificates of performance and completion of the contract provided for in the contract are such conclusive evidence against the defendant that plaintiff is entitled to recover. I shall have occasion to refer to these certificates on another point hereafter, but it seems obvious that certificates provided for in a contract which itself is jurisdictionally and fundamentally illegal cannot be

conclusive evidence of the validity of the very contract which provides for them.

If I am right in the conclusion reached on the branch of the case already discussed, it is immaterial whether defendant's second proposition that plaintiff did not show such completion of his contract as to be entitled to pay is well founded, and, therefore, I shall only discuss it briefly.

Reference has already been made to the requirement that the proposed plant should be capable of treating one million gallons of sewage in twenty-four hours. In addition to this requirement there was the following one : " The plant shall be so subdivided that during the test for six (6) months provided hereafter in these specifications, it shall be capable of treating Fifty thousand (50,000) gallons of sewage in twenty-four (24) hours ; and shall be so designed and constructed as to treat this amount of sewage independent of the rest of the plant, excepting that the boilers, pumps and engines designed for the complete plant can be used to discharge the sewage and direct its flow through this test plant ; all other appurtenances and appliances shall be designed for treatment of One Million (1,000,000) gallons per twenty-four (24) hours." It was alleged on the trial and is contended now by the defendant that this requirement called on the plaintiff to so subdivide the plant outside of engines, boilers, etc., that one-twentieth part of it would be complete and could be used independently of the rest of the plant, and that the evidence showed that this had not been done and that, therefore, no recovery could be had.

If the clause means precisely what the defendant claims it does I should doubt whether the evidence does establish that the plant had been so constructed that each section could be used independently of the rest. The clause, however, is ambiguous and the evidence is somewhat indefinite· and contradictory, but witnesses apparently bring the plant within what would be a fair interpretation of the terms of this clause. Furthermore, there were, as has already been stated, the usual provisions in the contract for certificates by defendant's offi-

cers of the performance and completion by plaintiff of his contract, and that he was entitled to pay therefor, and it is undisputed that such certificates were given.   This being so, they were conclusive on the defendant on such a matter as is now being discussed in the absence of fraud or mistake. (*Brady* v. *Mayor, etc. of N. Y.* 132 N. Y. 415 ; *Snyder* v. *City of New York,* 74 App. Div. 421.)

The trial judge ruled that the burden rested on the defendant to assail these certificates and it is expressly stated by defendant's counsel in his brief that, " Whether this certificate was successfully assailed was essentially a question of fact," and again, " The same criticism applies to Point II (of plaintiff's brief), that the fraudulent character of the certificates was a question of fact for the jury."   Under these admissions it would seem pretty plain that the plaintiff's complaint could not have been dismissed on this ground.   Still further, I think that the fifty thousand gallon clause heretofore referred to is to be construed as limited and applicable only to the period of six months for testing purposes, and if this be so undoubtedly the defendant through its proper officers in the absence of fraud might waive this particular test and make a binding acceptance of the work without it, and in my opinion a jury would have the right to say that that result followed in this case by reason of the acceptance and continued use by the defendant of the plant.

Several claims are made for compensation for extra services and extra materials claimed to have been necessitated by the defendant either through change of plans or through inaccuracies in plans and specifications on which plaintiff's bid was made or wrongful conduct in interfering with and obstructing the completion of the work.   So far as these claims spring from or are connected with the contract for the erection of the sewage disposal plant they must necessarily fall with the contract itself.   Such of them, however, as are based on the contract for the construction of the sewer stand on a different basis.   In *Uvalde Asphalt Paving Co.* v. *City of New York* (128 App. Div. 210 ; affd., 198 N. Y. 548), cited *supra,* the

court had before it for construction a contract substantially
identical with the present one, providing for the construction
of a sewer and a sewage disposal plant.    It was conceded on
the appeal by the contractor that the agreement for the latter
undertaking was invalid, but it was decided that while there
was but one written instrument covering both undertakings,
it should be held either that it set forth two contracts, one
relating to each undertaking, or else that it set forth a con-
tract covering two independent and separable subjects, and
that, therefore, it might be held good as to one although
invalid as to the other.    I think, and it seems to be admitted,
that that case covers this one so far as the validity of the
agreement for the construction of the sewer is concerned, and,
therefore, I shall consider on their merits the claims connected
with that work.

There was evidence tending to show that the plans on which
plaintiff based his bids contained the letters " M. H. W."
with certain figures and that these meant the level of mean
high water; that as a matter of fact the level of mean high
water was between one and two feet higher in the locality
where the sewer was constructed than was represented on these
plans, and that the result of this was that the contractor was
compelled to do more wet excavating, which was more expen-
sive than dry, and certain other things in the construction of
the sewer which entailed greater expense.    It is claimed that
this amounted to misleading plaintiff, and that, therefore, he
should receive extra compensation for this extra work.    I
think the difficulty with this contention is this : It appears
that the figures which were given were correct so far as related
to Newtown creek, and that this was the level commonly
adopted by engineers in the borough of Queens in construc-
tion work, and there was nothing on the plan to indicate that
the figures did not have reference to this basis ordinarily
adopted rather than to the level prevailing in Horse Brook
meadows where the sewer seems to have been constructed.
The plaintiff assumes in this claim that they referred to the
latter locality, and that, therefore, he had a right to act on

that basis. The evidence does not establish this proposition. If the data were not explicit and clear as between the two localities, he ought to have made some inquiry about them.

In the course of his work the plaintiff encountered a culvert, and it was necessary to make a syphon construction whereby to provide for the water running in this culvert. It is claimed that again defendant misled him by its plans, and that, therefore, it should compensate him for this extra work. The only claim of misrepresentation is based on a certain plan, plaintiff's Exhibit N, and which does not show the culvert. The only purpose which was to be served by this plan is indicated in the specifications at folio 495, where it is said : "The sewers and appurtenances are to be built of the materials, sizes and dimensions, with the connections, on the lines, at the depths and on the grades and in the manner shown on a plan  * * *  dated December 5th, 1900," and which is the plan referred to. This plan does not purport to show intercepting sewers or culverts. Reference to sections 157, 159 and 194 of the specifications for the construction of the sewer seem to indicate clearly the contemplation of the parties that such intercepting lines might be encountered in the construction of the sewers, and, therefore, it does not seem to me that the plan in question amounted to a representation that there were none, but this work came under the provisions of section 14 of the specifications reading "All loss or damage arising out of the nature of the work to be done under this agreement, or for any unforeseen or unusual obstruction or difficulties which may be encountered in the prosecution of said work  * * *  shall be sustained by the Contractor aforesaid."

The remaining claim, in my opinion, finds foundation in the evidence. By section 19 of the specifications it was provided that "During the progress of the work and until the entire completion and final acceptance thereof, the sewers  * * *  are to be kept throughly cleaned throughout, and left clean." The evidence tended to show that while the contractor com-

plied with this provision by cleaning out the sewer section by section as the work progressed, a large amount of sediment and dirt was carried into it through catch basins and sewers connected with it by the city during the progress of the work and which deposit he was compelled under his contract to remove at considerable expense. The city's only defense to this claim is that it had a right to do as it did under section 154 of the specifications which provided, " The said commissioner shall have the right to connect any sewer or sewers with the sewer herein described, or to grant permits to any person or persons to make connections therewith at any time before it is finally completed." I do not believe that this provision has any such broad meaning as the defendant seeks to give to it. The obvious purpose of it was to permit connections to be made with the new sewer as work progressed thereon and to avoid the unnecessary disturbance of streets and the expense which would be caused by making subsequent connections, but it did not mean that these sewers and connections should be put into actual use until the sewer was completed. It seems perfectly plain that when one or two sections of the sewer had been completed neither the city nor private individuals would be allowed to drain sewage into it although the connections were made for subsequent use. The interpretation of the clause is made all the clearer by reference to various provisions in the specifications which did call on the contractor to take care of sewage running through old sewers actually in operation and intercepted by the new one in construction, there being no similar provisions in the section relied on by the defendant. While the city under the circumstances now appearing would not be responsible under this clause because some individual who had been allowed to make a connection, improperly turned sewage or water into the new construction, I think it was responsible where for instance it constructed catch basins or lateral sewers and put them into use and carried dirt and debris into the sewer while being constructed. While the claim for this item is not large, plaintiff was entitled to have it submitted to the jury.

These views lead to the conclusion that the judgment appealed from should be affirmed as to all causes of action except the last one, and that as to that judgment is reversed and a new trial should be granted, without costs to either party.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur.

Judgment accordingly.