MOLLOY v. VILLAGE OF BRIARCLIFF MANOR.

(Supreme Court, Appellate Division, Second Department. June 2, 1911.)

1. MUNICIPAL CORPORATIONS (§ 360*)—CONSTRUCTION OF PUBLIC IMPROVEMENTS—CONTRACTS.

A contract to construct a public highway provided for the payment of a lump sum, unless changes in the plans increased or decreased the work. The specifications required the contractor to satisfy himself as to the conditions governing the work and the nature and extent of the materials required, and stated that the estimates of the engineer were approximate only. The engineer had estimated the amount of surplus

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

excavation at 8,000 yards, but the excavation amounted to 9,456 yards. *Held*, that the contractor was not entitled to compensation for the excavation in excess of the estimate of the engineer.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 892; Dec. Dig. § 360.*]

2. MUNICIPAL CORPORATIONS (§ 358*)—CONSTRUCTION CONTRACTS—CERTIFICATE OF ENGINEER—CONCLUSIVENESS.

A certificate of the engineer empowered by a construction contract to conclusively determine the amount or the quantity of the several kinds of work to be paid for under the contract and to determine all questions in relation to the work is binding on the contractor, in the absence of fraud or palpable mistake on the face of the certificate.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 890; Dec. Dig. § 358.*]

3. MUNICIPAL CORPORATIONS (§ 358*)—CONSTRUCTION CONTRACTS—CONSTRUCTION.

Where an engineer empowered by a construction contract to determine questions as to the work excluded from his final certificate under an erroneous interpretation of the contract work actually done by the contractor, as required by the contract, the decision was not binding on the contractor, but it could be attacked for palpable error.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 890; Dec. Dig. § 358.*]

4. MUNICIPAL CORPORATIONS (§ 358*)—CONSTRUCTION CONTRACTS—DECISION OF ENGINEER—CONCLUSIVENESS.

Where a contract for the construction of a public highway for a town required the contractor to do all the work according to specifications, providing for surplus excavation estimated at a specified number of cubic yards to be hauled to a designated place to be used in filling there, and providing for compensation, as follows: "Overhaul per cubic yard per mile the sum of .528"—a decision of the engineer empowered to determine questions as to the work that the price was computable at a mileage rate only for the actual distance of the haul, and that the words "per mile, the sum of .528," were equivalent in effect to one cent a foot, was in harmony with the contract and specifications, and conclusive on the contractor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 390; Dec. Dig. § 358.*]

5. MUNICIPAL CORPORATIONS (§ 358*)—CONSTRUCTION CONTRACTS—DECISION OF ENGINEER—CONCLUSIVENESS.

A contract for the construction of a public road required the contractor to haul excavations to a designated place for a specified compensation. The engineer required the hauling of the excavations to another place which was nearer than the place designated in the contract. *Held*, that the engineer required to determine questions as to the work must make a computation for the excavations on the basis of the computation provided for in the contract, and deduct the amount of the decrease in the work as authorized by the contract from the lump sum payable under the contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 890; Dec. Dig. § 358.*]

6. MUNICIPAL CORPORATIONS (§ 360*)—CONSTRUCTION CONTRACTS—CONSTRUCTION—EXTRA WORK.

A stipulation in a contract for the construction of a public road that the contractor shall not make a demand for extra work unless such work has been done in pursuance of written orders signed by the engineer cannot be waived by the engineer, and, in the absence of any waiver of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stipulation by the municipality, the contractor may not recover for extra work performed without written orders therefor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 892; Dec. Dig. § 360.*]

7. MUNICIPAL CORPORATIONS (§ 360*) — CONSTRUCTION CONTRACTS — EXTRA WORK.

Where a contractor for public work is directed by the village engineer in charge of the work to do over again work already done properly, he may under protest comply with the directions and recover the reasonable value of the work on the theory of a breach of contract; but, where the directions of the engineer are unquestionably beyond the contract requirement, the rule does not apply.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 892; Dec. Dig. § 360.*]

8. MUNICIPAL CORPORATIONS (§ 360*) — CONSTRUCTION CONTRACTS — "EXTRA WORK."

Where a construction contract did not require the performance by the contractor of certain work, the work was extra work, within the provision that no claim should be made for such work, unless performed in pursuance of written orders signed by the engineer in charge of the work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 892; Dec. Dig. § 360.*

For other definitions, see Words and Phrases, vol. 3, p. 2624.]

Appeal from Trial Term, Westchester County.

Action by Frank W. Molloy against the Village of Briarcliff Manor. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

William Woodward Baldwin, for appellant.

L. Laflin Kellogg, for respondent.

CARR, J. The defendant appeals from a judgment against it for the sum of $10,680.40 damages and costs, recovered by the plaintiff as an alleged balance due under a written contract between the parties for the construction of a public highway of the defendant. The contract in question was based upon plans and written specifications which in express terms were made a part of the contract itself. It provided for the doing of all the work and the furnishing of all the materials required by the plans and specifications for the lump sum of $31,900. The contract further provided as follows: "For any increase or deduction which may be made for changes as provided for in the specifications aforesaid." Here follows an enumeration of 22 different items of work with a price specified for each. The specifications contained a clause as follows:

"The engineer shall have the right to make such changes in the plans and specifications either before or after the contract is awarded as may from time to time appear desirable and such changes shall in no wise invalidate the contract. The contract price shall be increased or decreased in accordance with the schedule of prices bid by the contractor. Should any work be required that is not included in the plans and specifications such work shall

be done under the written order of the engineer after price has been agreed therefor, and approved by the Board of Trustees."

The written bid of the contractor provided as follows:

"I do hereby offer and agree to furnish all the materials, to fully and faithfully perform all the work in accordance with plans and specifications, and complete in a workmanlike manner the above work for the sum of $31,900.00. I hereby agree to accept the following named unit prices for any increase or deduction which may be made for changes as provided for in specifications for said improvement."

Here follows an enumeration of 22 separate items with prices, the same as that set forth in the contract itself. The specifications contained a heading, "Instructions to Bidders," under which appeared a provision as follows:

"Bids will be made upon the blank form attached to specifications, said specifications with original bid will be attached to and form part of the contract. A lump sum proposal shall be made."

The specifications contained a further provision headed "Engineer's Estimate of Quantities," with a list of quantities, together with a clause relating thereto as follows:

"The contractor must satisfy himself regarding the conditions governing the work, of the nature and extent of the materials required in the work."

The contract provided, on this point, as follows:

"The party of the second part [the contractor] admits and agrees that the amounts and quantities of materials to be furnished and work done, as stated in the proposals for estimate for the said work, are approximate only; that the said party of the second part is satisfied that the engineer's estimates of quantities is sufficiently accurate to determine the prices according to which he agrees to do the work required by this contract in accordance therewith; and that he shall not or will not at any time dispute or complain of such statement, nor assert that there was any misunderstanding in regard to the depth or character of the excavation to be made or the nature or amount of the materials to be furnished or work to be done," etc.

The plaintiff has performed the work required to be done under his contract, except possibly as to an insignificant detail as to which he makes allowance, and the present controversy between the parties is as to the balance due after crediting payments made. The plaintiff claimed a balance of $9,133.18 and recovered therefor, while the defendant admitted a balance due of $5,064.47, subject to a deduction of $102.31. The contract contained the usual clause for the certificate of the engineer as a condition precedent to payments, together with the usual provision that such certificate should be final and conclusive. A certificate was given by the engineer, but it is challenged by the plaintiff as false and fraudulent, and also as based upon an erroneous interpretation of the contract provisions. There is nothing in the record to show any fraud or intentional misconduct on the part of the engineer in the making of the certificate, but there is quite a controversy whether he did not make a palpable mistake in construing the contract provisions according to which he attempted to compute and adjust the amount payable to the plaintiff on the final payment.

The principal dispute between the parties arose as follows: The specifications contained a clause as follows:

"Surplus excavation estimated at 8,000 cubic yards shall be hauled by contractor to Scarborough dock to be used in filling in the same."

After the work was begun, it was found that Scarborough dock could not be used by the parties to the contract, and the engineer directed that the surplus excavation should be hauled elsewhere. This surplus excavation amounted actually to 9,456 cubic yards, instead of 8,000 yards, as estimated. Scarborough dock was about one mile from the highway under construction, and at the end of a downhill grade. The material to be supplied by the contractor was to be delivered to him at this dock, and his plan of operation contemplated sending to the dock his trucks loaded with surplus earth, the trucks to return with materials to be used in the performance of his contract. As before indicated, the contract contained an enumeration of items and prices for "any increase or deduction which may be made for changes as provided for in the specifications," and among such items was one as follows: "Overhaul, per cubic yard, per mile the sum of .528." A similar enumeration of items in the specifications contained the same item and price. The word "overhaul" seems to have been used as synonymous with "surplus excavation." The plaintiff claims an allowance for every cubic yard of surplus excavation at the rate of 52.8 cents a cubic yard, while the defendant's engineer has allowed him but for 4,405 cubic yards at the rate of 35 cents a cubic yard, making a difference between plaintiff's claim and the defendant's allowance of $3,451.02. It appears that this surplus excavated material was hauled to and disposed of at various places, none of them requiring a haul of more than 3,500 feet, and some of them along the line of the improvement itself. As stated, the engineer allowed for 4,405 cubic yards at the rate of 35 cents a cubic yard. This allowance was computed by taking as a standard the actual maximum haul of 3,500 feet and fixing the charge at the rate of 52.8 cents a yard, making a cent a mile. For the remaining 5,051 cubic yards, he made no allowance at all, on the theory that this material was not hauled away from the place of the improvement, and did not constitute "overhaul" in the sense in which the word was used between the parties. The trial court adopted the plaintiff's claim, and made allowance for 9,456 cubic yards of "overhaul" at the rate of 52.8 cents a yard, irrespective of the distance of the haul. In so doing the learned court fell into error.

[1] The contract between the parties was for a lump sum, unless changes should be made thereafter in the plans and specifications entailing more or less work. If such changes were made, and the work to be done, because thereof, was increased or deceased, then either increase of payments or allowance of credits were to be made as to various items of work at scheduled prices. There is no proof and no claim that any changes were made in the plans and specifications which increased the amount of surplus excavation or "overhaul." It is true that the engineer had estimated the amount of surplus excavation or "overhaul" at 8,000 yards, and it turned out to be actually 9,456 yards. Yet this estimate of the engineer was stated in the specifications to be

approximate only, and so agreed in the contract between the parties. If the "overhaul" had been carried to Scarborough dock, as provided in the specifications, the contractor would not have become entitled to recover at a unit price for the excess of actual surplus excavation over the approximation thereof in the specifications. Nor, if the amount of said overhaul had been less than the approximation, would the defendant have been entitled to a credit or deduction at the scheduled unit price. Both the plaintiff pleaded and the trial court found that the contract between the parties was an item contract and not one for a lump sum, and in this both the plaintiff and the court erred, for there was concededly but one contract made, and that was for a lump sum, with provision for items only in case there were increases or decreases of work resulting from changes in the plans and specifications. The only change in regard to the "overhaul" was as to the place of its disposal and not as to its amount. Hence the trial court erred in making an allowance to the plaintiff for the 1,456 cubic yards of "overhaul," which exceeded the approximation in the specifications.

A more serious question arises as to what deduction, if any, the defendant was entitled to make as to the "overhaul," because the place of its disposal as stated in the specifications was changed thereafter. Of the "overhaul" 4,405 cubic yards were trucked by the plaintiff distances varying up to 3,500 feet. For this amount the engineer made allowance at the rate of 35 cents a cubic yard, or a cent per foot of the maximum haul. In other words, he allowed to the defendant a deduction of 17.8 cents under the provisions of the contract and specifications relating to decreases of work caused by changes in the plans and specifications. In arriving at this result, the engineer was obliged to interpret the item provision in the contract, specifications, and proposal as to "overhaul." This provision, as before indicated, was in words as follows: "Overhaul, per cubic yard, per mile the sum of .528." The plaintiff claimed that this language meant clearly that 52.8 cents were payable for each cubic yard of overhaul, whether it was moved a mile or any part of a mile, while the engineer's interpretation thereof was that the price was computable at a mileage rate only for the actual distance of the haul; in other words, that "per mile the sum of .528" was equivalent in effect to one cent a foot.

[2] Unless the engineer's interpretation on this point is palpably erroneous on the face of the certificate, viewed in the light of the certificate and specifications, it is binding on the plaintiff, for the engineer was by express provision of the contract made the arbitrator between the parties. The agreement in the contract was as follows:

"To prevent all disputes and litigation, it is further agreed by and between the parties to this contract that the engineer appointed by the board of trustees of the village of Briarcliff Manor having charge of the work shall in all cases determine the amount or the quantity of the several kinds of work which are to be paid for under this contract, and shall determine all questions in relation to said work and the construction thereof, and he shall in all cases decide every question which may arise relative to the execution of this contract on the part of said contractor, and his estimate and decision shall be final and conclusive upon said contractor and such estimate and decision, in case any question shall arise, shall be a condition precedent to the right of the party of the second part to receive any money under this agreement."

Under a contract provision of this kind, it is well-settled law that the certificate of the engineer is binding upon the contractor in the absence of fraud or palpable mistake appearing on the face of the certificate. Everard v. Mayor, etc., 89 Hun, 426, 35 N. Y. Supp. 315; N. Y. Building Co. v. Springfield Elevator Co., 56 App. Div. 294, 67 N. Y. Supp. 887; Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276, 15 Am. St. Rep. 376; Sewer Commissioners v. Sullivan, 11 App. Div. 472, 42 N. Y. Supp. 358, s. c. 162 N. Y. 594, 57 N. E. 1123; Smith v. Mayor, 12 App. Div. 391, 42 N. Y. Supp. 522. The engineer, under such an agreement, became vested to a certain extent with the powers and duties of an arbitrator. The result of an arbitration may not be impeached for mere error of judgment in the decision of the arbitrator. While it may be voided for palpable mistake appearing on the face of the award, such, for instance, as of a clerical nature, as an error in computation or a clerical omission, yet as to a mistake of law, there being no fraud, the courts have generally no power of interference. Sweet v. Morrison, ut supra; Perkins v. Giles, 50 N. Y. 228; Hoffman v. De Graaf, 109 N. Y. 638, 16 N. E. 357; Matter of Wilkins, 169 N. Y. 494, 495, 62 N. E. 575.

[3] However, in Burke v. Mayor, etc., 7 App. Div. 128, 40 N. Y. Supp. 81, the general rule as to arbitrations, as applied to certificates and decisions of engineers under contracts, is qualified to the extent that where an engineer under an erroneous interpretation of the provisions of a contract has excluded from his final certificate work actually done by the contractor, and required by the contract, the certificate and decision is not final and binding upon the contractor, but may be attacked for palpable error.

[4] In any event, however, we feel that, as to the computation by the engineer for 4,005 cubic yards of "overhaul" at 35 cents a cubic yard, there was no palpable error which requires interference by the court. His determination on this point is in harmony with the provisions of the contract and specifications. The contention of the plaintiff, to be sustained, would require the elimination of the words "per mile" from the item in the unit schedule which reads, "overhaul, per cubic yard, per mile the sum of .528." This cannot be done without violence.

[5] The engineer, however, omitted entirely from his certificate any provision for some 4,000 cubic yards of surplus excavation which was hauled to various places by the contractor under the directions of the engineer and which was a part of the "overhaul" which should have gone to Scarborough dock, had there been no change. This omission could be justified, under the contract, only as arising from a "decrease" in the work resulting from a change in the specifications. The engineer should have made a computation therefor on the same basis of computation of a cent a foot, as was made as to the other 4,000 cubic yards, and then have deducted the difference from the lump sum payable under the contract. There appears no justification for his attempt to deduct from the contract lump sum 52.8 cents a cubic yard for this material. The contract afforded no justification for this attempted deduction, and likewise no justification for the

plaintiff's demand of. 52.8 cents for every yard of this portion of the "surplus excavation" or "overhaul," and which was adopted by the trial court.

One further question remains for consideration, viz., that which is referred to in the briefs of counsel as "rehandling at Holdens," and for which the trial court allowed a recovery by the plaintiff to the extent of $720. This work was not called for by the contract and specifications.

[6] If considered as "extra work," then it was not done in conformity with the contract requirements as to extra work, for it was therein agreed by the contractor:

"That he will not ask, demand, sue for or recover for the entire work any extra compensation * * * nor for any extra work except that which shall be actually performed, at the prices therefor herein agreed upon and fixed, nor than unless such extra work shall have been done in pursuance of written contracts or orders signed by the engineer, and all claims for work done under such written contracts or orders shall be presented for settlement on or about the beginning of the month following that in which said work may have been done, * * * and, in case of failure so to present them, the contractor shall forfeit all such claims and hereby is pledged not to present them in any way afterwards."

Concededly no written orders were given for this particular work, and there is no proof of any waiver by the defendant. A provision of this kind cannot be waived by the engineer. Langley v. Rouss, 185 N. Y. 201, 77 N. E. 1168.

[7] It is contended, however, by the plaintiff that this branch of the work in question was not "extra work" in the sense of the contract provisions relating to written orders, but falls within the recognized exception that, where a contractor is directed by the engineer to do over again work already done properly, he may under protest comply with the directions of the engineer and recover thereafter the reasonable value of the work on the theory of a breach of contract. Gearty v. Mayor, etc., 171 N. Y. 61, 63 N. E. 804; Lentilhon v. City of N. Y., 102 App. Div. 548, 92 N. Y. Supp. 897, affirmed 185 N. Y. 549, 77 N. E. 1190; People ex rel. Powers, etc., v. Schneider, 191 N. Y. 523, 84 N. E. 1118. That this exception to the general rule may apply, it is necessary that there should be fair room for debate as to whether the directions of the engineer were or were not justified by the contract provisions. Where such directions are unquestionably beyond the contract requirements, then the exception does not apply. Borough Construction Co. v. City of New York, 200 N. Y. 149, 93 N. E. 480. As to this specific item of the plaintiff's claim—that is, the "rehandling at Holdens"—there can be no reasonable contention that it was not required to be done under the contract and specifications.

[8] In fact, neither party to this controversy asserts that there was any contract requirement to do it. It was clearly extra work and can be recovered for only under the conditions of the contract as to extra work. But the plaintiff has not brought this item within the expressed conditions.

We have concluded, therefore, that the judgment should be reversed and a new trial granted, costs to abide the event. All concur.