[No. 18418. *En Banc.* November 13, 1924.]

CORA E. WADE et al., *Appellants,* v. THE CITY OF TACOMA
et al., *Respondents.*[1]

FRAUD (18) — EVIDENCE — ADMISSIBILITY. Where fraud is alleged, the widest latitude should be permitted in the introduction of evidence to impeach a public record, even if there would reasonably be differences of opinion as to the sufficiency of the proffered evidence.

MUNICIPAL CORPORATIONS (164, 167) — PUBLIC IMPROVEMENTS — CONTRACTS—CHANGE IN PLANS—EXTRA WORK—PAYMENT—POWERS OF CITY. A contractor on city work cannot be relieved from a mistake in the city engineer's estimates, greatly increasing the cost to property owners above the estimated and contract price agreed upon, where the contract provided that the contractor must examine and judge for himself the character and nature of the required work and material, and the correctness of the engineer's estimates, and providing for increase of pay only for changes in other than minor details.

SAME (258) — PUBLIC IMPROVEMENTS — ASSESSMENTS — REVIEW —WAIVER OF OBJECTIONS. Notwithstanding Rem. Comp. Stat., § 9375, providing that an assessment for local improvements, where confirmed without objections made, shall be conclusive, and prohibiting any proceeding to contest the assessment or any sale thereunder, a city may be enjoined from paying the contractor any sum in excess of the amount due on his contract, leaving the excess on the assessment to be collected and disposed of after all legal demands are satisfied.

HOLCOMB, FULLERTON, PARKER, and MITCHELL, JJ., dissent.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered September 10, 1923, dismissing an action for an injunction, tried to the court. Reversed.

*Burkey, O'Brien & Burkey, E. N. Eisenhower,* and *B. W. Coiner,* for appellants.

*William H. Pratt,* for respondent Torkelson.

*E. K. Murray, Percy P. Brush* and *Lorenzo Dow,* for respondent City of Tacoma.

[1]Reported in 230 Pac. 99.

TOLMAN, J.—This appeal is by a number of interested property owners seeking reversal of a judgment dismissing their action to enjoin the city of Tacoma from paying to the contractor a sum in excess of the contract price for the making of certain street improvements.

On September 13, 1922, the city council passed a resolution to widen the pavement then existing on St. Helens avenue in that city for a distance of three blocks, and to resurface the whole with asphaltic concrete to a depth of approximately two inches; the construction of a concrete retaining wall along a designated portion of the lower side of the street; and the removal and replacing of ornamental lamps. Prior to the ordering of the improvement, after the initiatory resolution passed by the city council, a preliminary estimate of the cost was made, of which several property owners were notified. This estimated cost was $30,327.44, which included estimated engineering expenses of $3,500. Plans and specifications were prepared by the city engineer for the improvement, which were duly adopted; advertisements for proposals for bids were made, and upon receipt of bids a contract was let to the respondent Torkelson on a lump sum bid with units separately priced, pursuant to the call for bids for the computation of all extras and deductions, to complete the entire improvement for the sum of $29,480. The contract called for the completion of the work according to the plans and specifications prepared by the city engineer, which work included the widening and resurfacing of the street and "doing all other necessary work to bring the finished surface to a proper grade and crown;" construction of Portland cement concrete retaining wall and filling in back of the same, "the excavation for all walls to be carried

down to a depth satisfactory to the commissioner of public works or his representative.'' The exact location of the wall was designated. The contract also called for the removal of street lamps at the expense of the contractor.

The contractor completed the work and, at the conclusion thereof, an assessment roll was prepared for a sum total of $39,459.70. This included the contract price of $29,480, to which had been added so-called extras ordered and allowed by the city engineer and the commissioner of public works amounting to $12,175.45, from the total of which was subtracted $737.75 as the value of work omitted and an excess of $1,458.90 on the engineering estimate, which was originally $3,500.

A time was set for hearing on the confirmation of this assessment roll. Notice of the time and place of such hearing was duly published in the city official paper, which is a paper of general but not extensive circulation, but that notice the appellants claim never to have seen. Nothing was stated in the notice as to any increase in the roll over the original estimate or the contract price. None of the property owners had any actual notice of the hearing on the assessment roll or of the increase over the contract price or the original estimate.

At the time the roll was confirmed, none of the property owners filed any objections or appeared, and none of the city commissioners, except the commissioner of public works under whose direction the roll had been prepared, had knowledge that the roll exceeded the original estimate or the contract price. The mayor and certain councilmen admitted that they would not have confirmed the roll had the council known the facts, and the commissioner of public works admitted that he had

not sufficiently called the attention of the mayor and the council to the fact that the assessment roll exceeded the original estimate or the contract price. The roll was, however, at all times on file in the office of the city clerk. It was before the city council at the time of its confirmation, and immediately after the confirmation the property owners were notified by post card of the actual amount assessed against their properties. Thereupon various owners appeared before the council and asked relief. The council, for the first time being informed of the facts, referred the matter to the city attorney to ascertain if its action could be rescinded. The city attorney, fearing that such an attempt would involve the city in litigation with the contractor, advised against a rescission, and no further action was taken by the city council.

This action was then commenced to enjoin the payment to the contractor of any sum in excess of that which he was entitled to receive under the terms of his contract, and to cancel the assessment roll. By trial amendment it was also alleged that, after bids were invited, the specifications were changed in the contract with Torkelson, in order to make legal, if possible, the additional payment. Upon the trial the court below refused to permit a witness named Warter, who had contemplated bidding for the contract, to testify as to a difference in the specifications furnished to him by the engineering department upon which to bid from the specifications attached to the contract with Torkelson. The court also refused to permit the city comptroller to testify that no previous or subsequent contract had ever been entered into by the city containing the interlineations which appear in the specifications attached to the contract in question. The witness Warter was not permitted to testify that he called the

attention of the engineering department of the city, prior to the opening of the bids, to the fact that the estimates were insufficient and the plans defective. Cross-examination of the city engineer was not permitted as to the reasons why the specifications in this particular instance contained interlineations not found in any other specifications.

The rulings of the court above indicated, together with the refusal to enter judgment for the appellants as prayed for, constitute the errors claimed on this appeal.

In summing up the case, the trial judge stated that the evidence did not show any actual fraud, and that what would constitute constructive fraud under the circumstances might be a matter of dispute which he would not go into; that what impressed him was that, under the proof, the contractor would probably have been largely the loser had he been compelled to receive only the contract price; and, after some further observations, the trial court concluded that he could find no equity on the showing made by the appellants.

The record shows, and it is admitted, that the engineering department of the city made a gross mistake in the estimate. It is contended that this mistake was not discovered until the contract had been let and the contractor had entered upon the premises and the work. It seems possible, therefore, that, in order to rectify this mistake and justify the additional payments necessary to make the contractor whole, the specifications were then altered by adding with pen and ink the four words "without extra compensation therefor," which will be hereinafter further referred to.

When fraud is alleged, the widest latitude should be permitted in the introduction of evidence, and we

think the trial court should have received the offered testimony; but even so, since every intendment must be indulged in support of a public record, there might reasonably be differences of opinion as to whether, if the appellants had been permitted to prove all they offered to prove, that would have been sufficient to impeach the record, and had the trial court admitted the evidence and held it insufficient, we could not have interfered. We therefore pass this question without further comment.

The main question is as to the power of the city in the premises. The contract provides:

"Bidders must examine and judge for themselves as to the location and character of the proposed improvement, nature of the material to be excavated, etc.

"The Engineer's estimates are figured net; no allowances are made for waste and breakage of materials. The contractor assumes all risk for variance in any computation of amounts or quantities necessary to complete the work required by these specifications.

. . . .

"All material and workmanship used in this improvement shall be in accordance with the following detailed specifications, and the accompanying diagram of the district and plans, which are hereby made a part of these specifications. The arrangement of walks, curbs and minor details are subject to slight changes or alterations as the Commissioner of Public Works may require, according to instructions furnished or delivered before the beginning of or during the progress of the work. No work or material not fully described on the said diagram or specifications shall be furnished without detailed plans or instructions from the Commissioner of Public Works; provided, however, that no change in the work shall aggregate in extra cost, as estimated by the City Engineer, throughout the entire district, an amount exceeding that bid by the contractor upon the work. The intent and purpose of this clause is to permit changes

to be made in minor details to conform to the necessities that may arise or become evident as the work progresses, such as varying positions of walks, etc., but not to make any changes in the general design, nor to add to the estimated expense to the contractor in the aggregate, *without extra compensation therefor.*" (The italicized words being those interlined with a pen.)

When these provisions are read together, it seems to us their meaning is too plain to call for construction. The wording of the specifications and their manifest intent is that the bidder who afterwards becomes the contractor must examine and judge for himself as to the character and nature of the work and the labor and material required to complete the contract; that the engineer's estimates are no more than a mere guide, and the bidder must for himself determine as to their correctness, and if he accepts them unchecked and unverified he does so at his peril. Moreover, paragraph 31 of the specifications, which contains the interlined words "without extra compensation therefor," provides for the increase of pay only for changes in plans and specifications in other than minor details, and here there were no changes in either plans or specifications, either minor or major, and the work, and all of the work, was done strictly under the plans and specifications as first written and as embodied in the contract.

Sympathy for the contractor, who in the face of these provisions relies upon the estimates of the engineer as to labor and material required, must not blind us to the law or lead to the adoption of a rule which in this particular case might relieve from an honest mistake, but in the future might permit dishonesty and fraud to wax fat at the expense of innocent and helpless property owners. When a special

assessment has failed, the city may not assume and pay the cost of the work from the general fund (*Pratt v. Seattle*, 111 Wash. 104, 189 Pac. 565); and on principle and in reason it would seem that, even though the mistake be its own, the city cannot in such a case as this relieve the contractor at the expense of the property owners. The reasoning in *Paul v. Seattle*, 40 Wash. 294, 82 Pac. 601; *Malette v. Spokane*, 68 Wash. 578, 123 Pac. 1005, Ann. Cas. 1913E 986; and *McHugh v. Tacoma*, 76 Wash. 127, 135 Pac. 1011, lend support to this position.

A contractor, under the terms of such a contract as this, is bound to ascertain for himself the amount of labor and material required to complete the contract (*Hart v. City of New York*, 201 N. Y. 45, 94 N. E. 219; *Dunn v. City of New York*, 205 N. Y. 342, 98 N. E. 495; *Winston v. City of Pittsfield*, 221 Mass. 356; 108 N. E. 1038; *Blackstaff Engineering Co. v. Commissioners of Sewerage, of Louisville*, 147 Ky. 629, 145 S. W. 152; *Stuart v. Cambridge*, 125 Mass. 102; *Molloy v. Village of Briarcliff Manor*, 145 App. Div. 483, 129 N. Y. Supp. 929), and, having failed to do so, the city, acting as the agent of the property owners, has no power at their expense to relieve him by paying the excess over the estimated cost under the guise of extras, when in fact the whole work was fully embraced and covered by the contract.

The statutory proceedings were followed in the matter of the confirmation of the assessment roll and no appeal was taken therefrom. In mandatory terms the statute provides that the failure to make objections in the manner prescribed and within the time fixed creates a conclusive presumption of the waiver of all objections, and by § 23 of chapter 98, Laws of 1911, p. 455 [Rem. Comp. Stat., § 9375], it is provided:

"Whenever any assessment roll for local improvements shall have been confirmed by the council or other legislative body of such city or town as herein provided, the regularity, validity, and correctness of the proceedings relating to such improvement, and to the assessment therefor, including the action of the council upon such assessment roll and the confirmation thereof, shall be conclusive in all things upon all parties, and cannot in any manner be contested or questioned in any proceeding whatsoever by any person not filing any objections to such roll in the manner and within the time provided in this act, and not appealing from the action of the council in confirming such assessment roll in the manner and within the time in this act provided. No proceeding of any kind shall be commenced or prosecuted for the purpose of defeating or contesting any such assessment, or the sale of any property to pay such assessment, or any certificate of delinquency issued therefor, or the foreclosure of any lien issued therefor; *Provided,* That this section shall not be construed as prohibiting the bringing of injunction proceedings to prevent the sale of any real estate upon the grounds (1) that the property about to be sold does not appear upon the assessment roll, or (2) that said assessment has been paid."

Hence we cannot cancel or set aside the assessment, but nevertheless, since, as we have already seen, the city may not pay to the contractor any more than the sum legally due him, the trial court should have enjoined the city as to the payment of any excess, leaving such excess to be disposed of as the law may direct, after all legal demands are satisfied.

The judgment is reversed, with directions to enter a judgment in harmony with the views herein expressed.

Main, C. J., Bridges, Mackintosh, and Pemberton, JJ., concur.

Holcomb, J. (dissenting) — Although the decision of the majority is but a Pyrrhic victory for appellants, it unfortunately introduces marked discord in our decisions. Under the statute quoted in the majority opinion, § 23, ch. 98, Laws of 1911, p. 455 [Rem. Comp. Stat., § 9375], appellants are estopped to institute and maintain this action, and we have so held in a number of cases.

In *Goetter v. Colville*, 82 Wash. 305, 144 Pac. 30, Judge Main, speaking for the court of the provisions of that section, said:

"The language of the statute is clear and explicit and mandatory in its terms."

In *Grandin v. Tacoma*, 87 Wash 98, 151 Pac. 254, a *per curiam* opinion in which the section quoted is dealt with, where no objections had been filed by the property owners to the assessment and no appeal taken from the action of the city council, it was said:

"Appellants have filed no objections as provided by this act, and are not attacking the assessment on either ground given by the law as cause for injunction. Their right to enjoin the collection of the assessment results if at all from a total lack of authority in the council to assess their property for this improvement. . . . . By failing to file written objections before the confirmation of the assessment roll, showing that the improvement was of no benefit to their property, the appellants have brought themselves within the estoppel of § 23 of the act, and this action not being one of the exceptions provided for therein, the court was without jurisdiction of the subject-matter."

It will be recalled that the exceptions in the proviso of § 23 permitting the bringing of injunction proceedings to prevent the sale of any real estate are, (1) that the property about to be sold does not appear upon the

assessment roll, or (2) that the assessment has been paid.

In *North American Lumber Co. v. Blaine,* 89 Wash. 366, 154 Pac. 446, we again dealt with this section, Judge Parker, speaking for the court, saying:

"This court has repeatedly held that such a determination by the city council, had upon due notice under previously existing statutes similar to this, became final as to all owners of property so assessed, unless the assessment was attempted to be levied under such circumstances that the city was exceeding its jurisdiction over the *subject-matter.* This question is reviewed at some length in *Rucker Brothers v. Everett,* 66 Wash. 366, 119 Pac. 807, 38 L. R. A. (N. S.) 582, where our former decisions are noticed. The doctrine was adhered to in *Grandin v. Tacoma,* 87 Wash. 98, 151 Pac. 254, involving an assessment under this statute."

In *Giles v. Olympia,* 115 Wash. 428, 197 Pac. 631, 16 A. L. R. 493, where the property owners had appeared before the city council upon due proceedings, made their objections, which were denied, and appealed to the superior court from the action of the city council, we sustained the objections and defenses of the property owners; but in *Lee v. Olympia,* 122 Wash. 616, 211 Pac. 883, where the property owners in the same local improvement district as in the last cited case had not appeared before the city council and objected and set up their defenses, afterwards bringing an independent action like the one at bar, we denied their right to relief, all the present judges concurring in that decision except Judges Mackintosh and Pemberton.

There is no doubt in my mind that the judgment in this case should be affirmed, and the litigation and expense to the city and property owners ended. I therefore dissent.

FULLERTON, PARKER, and MITCHELL, JJ., concur with HOLCOMB, J.