. MECHANICS' BANK OF BROOKLYN v. CITY OF NEW YORK.

. (Supreme Court, Appellate Division, Second Department. May 29, 1912.)

1. CONTRACTS (§ 287*)—CONSTRUCTION—DECISION OF ENGINEER.

    Where an excavation contract provided that the engineer in charge of the work should be the arbiter of all controversies arising from claimed ambiguities under the contract, his certificate, that for purposes of payment the measurement of the embankment should only be taken from the former surface of the land filled to the grade of the street, was conclusive, unless his interpretation of the contract was palpably erroneous.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1308, 1309, 1312–1316, 1318–1342, 1344–1351; Dec. Dig. § 287.*]

2. MUNICIPAL CORPORATIONS (§ 352*)—PUBLIC IMPROVEMENTS—EXCAVATION CONTRACT—CONSTRUCTION.

    A contract between plaintiff's assignor to the defendant city provided for grading a certain street to a level shown on the plans; the lay of the ground requiring an excavation to a lower level on parts of the street and the continuation of such grade across a marsh. necessitating an earth embankment properly graded, so that where the street crossed the marsh there would be an embankment with prescribed slopes. A subdivision of the specifications, entitled "Filling and Embankments," provided that, when the material excavated was not sufficient to regulate the street, such additional material necessary should be furnished by the contractor, and the quantity thereof, to be paid for as "filling to be furnished," should be the difference between the total amount of filling done and excavation made, with slopes and to the grade shown on the cross-sections of the street, and further provided that the total amount of filling done would be only so much as is included between the elevation of the surface of deposit and the grades thereinbefore set forth, where the filling comes up to such grades, and that "no allowance will be made the contractor for any shrinkage, sinking, or settlement." Held, that the contractor was only entitled to payment for embankments filled in from the former surface of the marsh to the grade of the street. as completed, and was not entitled to payment for material which sank below the surface of the marsh.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 883, 884; Dec. Dig. § 352.*]

3. MUNICIPAL CORPORATIONS (§ 265*)—PUBLIC IMPROVEMENTS—STREET IMPROVEMENTS.

    In having a street graded under a contract which provided that the cost of the work should be borne by the property benefited, through local assessment, the city only acted for the property owners affected.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 711, 713–715; Dec. Dig. § 265.*]

Appeal from Trial Term, Queens County.

Action by the Mechanics' Bank of Brooklyn against the City of New York. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and WOODWARD, JJ.

James M. Gray, of Brooklyn (Joseph E. Owens, of Brooklyn, on the brief), for appellant.

Clarence L. Barber, of New York City (Terence Farley, of New York City, on the brief), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CARR, J.  On August 17, 1906, John J. Young entered into a contract with the city of New York for the regulating and grading of Washington avenue in the borough of Queens. This contract was awarded to Young on proposals after competitive bidding upon printed specifications which were made expressly a part thereof. The expense of the public improvement in question was to be met by assessment on the property benefited thereby. The street in question was to be graded between Vernon avenue and Academy street. Over a portion of the route there was considerable excavation to be done to bring the street to the prescribed grade. For a considerable distance the street, some 60 feet wide, passed over low-lying marshy lands, parts of which were covered with water at high tide. The surface of the street as graded was considerably above the level of the marsh over which it was to be carried by a causeway or embankment of earth. The contract was a unit contract; that is, the work was divided into respective units for which respective prices were fixed in accordance with the quantities embraced in each unit. The proposals for bids stated these units approximately only, and provided for approximately "80,000 cubic yards of earth filling (furnished)." The contract as awarded to Young contained a clause that he should be paid "For all embankment, in excess of excavation per cubic yard, the sum of ninety (90) cents ($0.90)." The contract in question was made on a printed form, ordinarily employed in the borough of Queens, for street improvements. In this form, as printed originally, the clause appears as follows: "For earth filling furnished, per cubic yard." Before the execution of the contract this clause was altered by drawing a pen through the words "earth filling furnished" and inserting in place thereof the words "all embankment, in excess of excavation." During the progress of the work, Young assigned his interest under the contract to the plaintiff.

The plaintiff claimed that, in constructing the causeway or embankment across the marsh, the contractor used 99,988½ cubic yards of material, a very large part of which was ashes of hard coal, and that of this total there were 85,494½ cubic yards "in excess of excavation," for which it should be paid at the rate of 90 cents a cubic yard. The engineer in charge of the work, however, refused to allow the claim of the contractor and made a certificate which fixed the amount payable to the contractor at $40,425.75 less than the contractor's claim. The controversy presented on this appeal does not arise from any dispute as to the quantity of material that went into the completed embankment, but arises from the interpretation of the provisions of the contract and specifications governing the method of measurement of the material used to form the embankment. It appeared on the trial that, when the contractor came to construct the embankment within the street lines across the marsh, large quantities of the deposited material sank below the surface of the marsh, and upon which further deposits were required until the embankment became firmly bedded and was carried to the required grade of the street. The contractor, and his assignee the plaintiff, claims that the measurement for purposes of payment should be from the bottom of the embankment,

where it found a firm base, to its top, where it reached the general grade of the street, while the city engineer certified only to a measurement of the embankment from the former surface of the marsh to the grade of the street as completed.

[1] In so doing, the engineer considered certain clauses of the specifications as controlling on this point, and unless his interpretation of said clauses is palpably erroneous, for by the contract he was made the arbiter of all controversies arising from claimed ambiguities, his certificate was conclusive. Molloy v. Village of Briarcliff Manor, 145 App. Div. 483, 129 N. Y. Supp. 929; Burke v. Mayor, etc., 7 App. Div. 128, 40 N. Y. Supp. 81.

[2] It is contended by the plaintiff that the specifications contain no agreed rule for the measurement of "embankments" required in the performance of the contract, while the respondent asserts that this question is determined plainly by the specifications. Before turning to the latter, it is well to bear in mind the exact situation before the parties when the contract was made. The street was to be graded to a level or grade shown on certain plans. To make this grade required excavation to a lower level on certain parts of the street and a continuation of this fixed grade across the lowlands of the marsh. To do this, an earth embankment, properly sloped, was provided for. So to bring about the grade established, material was taken out in places to cut down the natural grade, and material had to be deposited in certain places to fill up to the established grade. Where the street crossed the marsh, the result of filling up was an embankment with prescribed slopes. The specifications contained a subdivision headed "Filling and Embankments." This subdivision contained, among others, two clauses numbered respectively 13 and 14, which read as follows:

"(13) When the material excavated, fit for filling, is insufficient in quality to regulate the street, such additional material necessary shall be furnished, and placed by the contractor, and the quantity thereof to be paid for as 'filling to be furnished' shall be the difference between the total amount of filling done and excavation made, with slopes in case as herein described and to the grades shown on the cross-sections of the street.

"(14) The total amount of filling done will be determined by calculation, and will be only so much as is included between the elevation of said surface of deposit, as recorded by the engineer, and the grades hereinbefore set forth (where such filling comes up to such grades), *and no allowance will be made the contractor for any shrinkage,* sinking or settlement." (Italics ours.)

Then follows a clause as follows:

"All filling shall be good, wholesome earth, free from all frozen materials, garbage, vegetables, spongy or unsuitable matter."

The words in the fourteenth clause that "no allowance will be made the contractor for any shrinkage, sinking or settlement" are very clear and significant. They cover unmistakably a case where the deposited material may sink or settle beneath the original surface of deposit. Thus, if these clauses control, then the engineer was right in giving his certificate, and the learned trial court dismissed the plaintiff's complaint properly. But, urges the appellant, clauses 13, 14, and 15 do not use the word "embankment," and therefore do not apply to "em-

bankments." It is pointed out that Young's written bid was for "embankment, in excess of excavation," and that the contract uses precisely the same terms. If the clauses in question do not refer to an "embankment," then the contract and specifications are silent entirely, not only as to measurement of such work, but likewise as to the nature of the materials which were to enter into it. We think this claim is untenable. An earth embankment is so common a matter that there is no mystery about it. While filling in does not always result in an embankment, as for instance where a depression of the surface is so filled in that a uniform surface results longitudinally and laterally, there is no embankment. Where, however, as the result of filling in a new grade is created, one or both sides of which is above the adjacent grade, then there is an embankment. When such is the result, the completed embankment is, as in this case, the result of the filling, for the embankment is made by the filling done accordingly. So, when the specifications provided for a manner of calculating "the total amount of filling done," they covered a case where "the filling done" resulted in an embankment just as fully as where it resulted in a uniform level laterally as well as longitudinally. Reasonably interpreted, there was no ambiguity on this question in the contract and specifications construed together.

[3] As before indicated, the expense of this contract, as recited in the instrument itself, was to be borne by the property benefited through local assessment. Under well-settled rules of law, the city was acting only as the agent for the property owners so affected. The contractor had notice of this fact, the specifications were before him, he was bound to exercise good judgment, and to acquaint himself with the actual conditions which confronted him in the performance of the work. For any error of judgment on his part, the courts cannot come to his rescue by conjuring up an ambiguity where none exists reasonably, especially where the result would be either to increase the burden of the local assessment or to imperil the validity of the assessment itself.

The judgment should be affirmed, with costs. All concur.