urged that the reading of such paragraph was prejudicial to the defendant, but the ruling of the recorder in admitting the same in evidence was upheld by a bare majority of the court. Mr. Justice Patterson, who wrote the prevailing opinion, said (page 212, 44 App. Div., and page 788, 60 N. Y. Supp.) that it was "a statement of the witness as to his own conduct and actions, stamping them with dishonesty, and directly impairing his credit." In the case at bar, however, the situation is entirely different. As seen, Jones merely complained that he had been defrauded by another (i. e. the plaintiff), while in the Flechter Case the witness admitted his own dishonesty in the transaction.

There were other grounds of error assigned, but, in view of the conclusion above reached, it will not be necessary to consider them.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(48 App. Div. 279.)

CODY et al. v. TURN VEREIN OF CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. February 16, 1900.)

1. MECHANIC'S LIEN—COUNTERCLAIM.
   In an action to foreclose a mechanic's lien brought by a subcontractor against the contractor, his sureties, and the owner of the land affected, the contractor, as the primary debtor, is entitled to set up a counterclaim as a defense to the action, though the counterclaim exists only in his favor, and not in favor of the other defendants.

2. CONTRACTS—UNLAWFUL ABANDONMENT—DAMAGES.
   Plaintiffs contracted with defendants to do certain excavating, the payments therefor to be made as the work progressed, on certificates of the engineer of the owner of the property. After commencing work, plaintiffs demanded an arbitrary payment in excess of that justified by the work done, which was refused because not accompanied by a certificate of the engineer, which certificate plaintiffs could have easily obtained. Subsequently plaintiffs abandoned the work, and, after giving ample notice, defendants advertised for bids for its completion, and awarded the lowest bidder a contract at a figure larger than that to be paid plaintiffs. Held, that plaintiffs unlawfully abandoned their contract, and that defendants were entitled to recover of them the amount they were compelled to pay for the work in excess of the sum for which plaintiffs contracted to do it.

Appeal from special term.

Action by Joseph W. Cody and another against the Turn Verein of the City of New York and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

The following is the opinion of the referee (HALL, R.):

The plaintiffs seek by this action to foreclose a mechanic's lien filed by them against the real estate of the Turn Verein of the City of New York for a balance due them under a subcontract with the defendants John Weber's Sons, who were the principal contractors with the Turn Verein for the erection of a building on the lands affected by the lien. The surety company is made a party to the action by reason of having furnished a bond to discharge the lien. There is practically no dispute between the parties as to the performance by plaintiffs of the work required under their contract with Weber & Sons upon this building, excepting in some minor particulars, in which Weber & Sons performed work which plaintiffs neglected to perform, and for

which an allowance of $50.20 has been made. I find no evidence to contradict that of the witness Hugo Weber regarding the necessity and performance of this work, and that it was part of the work which should have been performed by plaintiffs under their contract, except a very general statement that plaintiffs performed their contract, which cannot be regarded as sufficient to overcome the positive and detailed evidence referred to. Except for the counterclaim hereinafter referred to, the plaintiffs would be entitled to judgment against Weber & Sons for $449.80 and interest, and establishing their lien for that amount, and for recovery against the surety company which bonded the lien. The defendants Weber & Sons, however, set up as a counterclaim against the plaintiffs a claim for damages for the nonperformance of another contract between the parties, made on May 28, 1898, under which the plaintiffs agreed to excavate and remove the rock and earth from certain premises of the Pabst Brewing Company of Milwaukee, on West Forty-Eighth and Forty-Ninth streets, New York City, for the sum of $2,875; it being claimed that plaintiffs commenced work under such contract, and shortly afterwards abandoned the same, and that the defendants Weber & Sons were obliged to pay, and did pay, for the completion of the same the sum of $4,-479.47, leaving a balance due them from plaintiffs of $1,604.27. The plaintiffs' counsel insists, if I rightly understand his position, that the defendants Weber & Sons cannot set up their counterclaim in this action, but must resort to a separate action for the recovery of any damages under their contract upon two grounds: The first, that this action is equitable in its nature, and no counterclaim resting in contract can be set up; and, secondly, that the counterclaim exists (if at all) in favor of only one of the defendants. The action to foreclose a mechanic's lien is similar in its nature to an action for the foreclosure of a mortgage, and the procedure is made to conform as nearly as may be to such an action. The action to foreclose a mortgage is founded on the debt, as evidenced by a bond or note or by the mortgage itself, where no bond or note is given, and the action proceeds in rem against the mortgaged property, and in personam against the debtor on the bond and any others who have assumed the debt. The action to foreclose a lien has its foundation in a debt owing to the plaintiffs by some one or more of the defendants, and proceeds in rem against the property affected by virtue of the statute creating the lien, and in personam against the debtor. The lien created by statute may be likened, then, to the mortgage, and the original debt to the bond, but in either case the foundation of the action is the debt secured in one case by the mortgage and in the other by the statutory lien. In either case, judgment may be had for deficiency against the original debtor, and, in the case of a lien, judgment may be had against the debtor for the entire amount of the debt, even though the lien fails. I can see no distinction, therefore, between the two actions, so far as the right to counterclaim exists.

The authorities in this state are all to the effect that a counterclaim may be set up and maintained in an action for the foreclosure of a mortgage in favor of the mortgagor and against the mortgagee. Holden v. Gilbert, 7 Paige, 208; Chapman v. Robertson, 6 Paige, 627; Bathgate v. Haskin, 59 N. Y. 537; Irving v. De Kay, 10 Paige, 319; Knapp v. Burnham, 11 Paige, 332. These authorities, in addition to the weight to which they are entitled as expounding and settling the law in this state, have the support of reason and justice. Any matter which would tend to reduce the debt would reduce the lien on the security pro tanto. If the debt did not exist, the security would be relieved entirely, and it is immaterial whether the reduction or cancellation of the debt arises from direct payment, in whole or in part, or by reason of a cause of action on contract existing in favor of the mortgagor against the mortgagee or holder of the mortgage; and so, in the case at bar, if the debt due the plaintiffs is reduced, the real estate of the Turn Verein is relieved to that extent; and, if it is paid, it is relieved entirely, and there can be no difference whether it is extinguished by direct payment, or by the existence of a proper cause of action in favor of defendants against plaintiffs for as great or greater amount than plaintiffs' claim.

The second ground of objection is practically disposed of by the authorities cited and for the reasons before stated. It is unimportant whether the coun-

terclaim exists in favor of all the defendants so long as it exists in favor of the primary debtor. It is by reason of the debt, and the debt alone, that the lien exists. Without it there could be no lien, and the owner of the realty could not be a party. The surety company merely takes the place of the land affected. If no debt exists in favor of plaintiff, then no liability exists against the company on its bond. I am therefore of opinion that the defendants Weber & Sons had a right to set up their counterclaim in this action, and to maintain it if supported by the evidence.

By the contract of May 28, 1898, between plaintiffs and defendants Weber & Sons, the plaintiffs agreed, on or before July 1, 1898, for the sum of $2,875, to excavate and remove all rock, buildings, and level off on the property of the Pabst Brewing Company, West Forty-Eighth and Forty-Ninth streets, as described on a survey map made by George C. Hollorith, dated March 24, 1898, in a good, workmanlike, and substantial manner, to the satisfaction and under the direction of the engineer of the Pabst Brewing Company, to be testified by a writing or certificate under the hand of the Pabst Brewing Company. Payments were to be made as the work progressed to the amount of 85 per cent. of the work done and certified by the engineer of the Pabst Brewing Company of Milwaukee, Wis., and the balance upon completion of the work and upon the final certificate of said engineer. The plaintiffs proceeded with their work, and performed work variously estimated as amounting at contract price to from $300 to $1,500, and demanded a payment of $1,000, or $1,500, which the Webers refused to make except upon the certificate of the engineer, which certificate was never furnished; and about July 19th they filed a lien against the property, and soon after that gave up and abandoned their work, and removed their tools and plant from the premises. The defendants Weber sent repeated notices to them to go on and complete their work, and that in default thereof they would go on and complete the work under the provisions of the contract. The plaintiffs refused and neglected to go on and complete the work, and defendants then proceeded to advertise for bids for completing the work required by the contract. They received several bids, and accepted the lowest, which was $4,400, and the work was accordingly completed. The defendants Weber were compelled to expend an additional sum of $79.47 for the performance of some additional work which was included in plaintiffs' contract with them, but which was inadvertently omitted from the contract for the completion of the work.

There was no dispute whatever before me as to the perfect fairness of the proceedings of the defendants in procuring bids for completing the contract, or as to the payment by them of the amount claimed for such completion, nor was there any claim or proof that the amount paid for completion was more than the reasonable value of the work; the sole contention of the plaintiffs being that the defendants Weber, having refused to make payments to them under the terms of the contract, committed a breach which justified the plaintiffs in refusing to further perform their contract, and entitled them to recover the value of the work done. There was little or no pretense on the part of the plaintiffs of complying with that portion of the contract which required them to procure a certificate from the engineer of the Pabst Brewing Company of Milwaukee, Wis., as a condition precedent to payment. It is true that a Mr. Adams, not a member of plaintiffs' firm, went to the office of the Pabst Brewing Company of New York, an entirely separate and distinct corporation, and asked for a payment under plaintiffs' contract, and was informed that the company did not recognize the plaintiffs, but that the company had made its contract with the Webers, and could not recognize any one else. This ended the efforts on plaintiffs' part to procure a certificate.

There is no claim that the contract was unfairly made, or did not express the exact agreement of the parties. They knowingly agreed, as a part of it, to procure the certificate of the engineer of the Pabst Brewing Company of Milwaukee, Wis., as a condition precedent to payment, but there is not a word of evidence to show the slightest attempt on their part to procure such certificate. The company had an engineer, and a proper communication to it would have produced the required measurements of the work and certificate, or would have put them in a position to have claimed that the certificate

had been unreasonably withheld and refused; but no such attempt was made,. no certificate was demanded, and none was furnished.

But, even if the engineer of the Pabst Brewing Company had unreasonably refused to grant a certificate, the plaintiffs could not have demanded the payment of an arbitrary sum for the work done. They would have been obliged to ascertain in the best way they could, by measurement by another engineer or some other competent person, the amount of work done, and then they could have demanded an 85 per cent. payment. Their demand for payment of $1,000 or $1,500 was grossly excessive, and far beyond the value of the work done by them, which, from the evidence, did not exceed $500 at the outside at contract prices, and their claim that half the work was done was not supported by the evidence.

At the time of the conferences and correspondence looking to an adjustment of the differences between the parties, the time limited by the contract for the completion of the work had long since expired, and plaintiffs showed no desire or intention to complete their work. The reason of this is rendered apparent to me from the evidence. The plaintiffs had taken the contract at a very low price, expecting to blast out the rock in very large and heavy pieces, and to use them in government fortifications; but they seem to have been disappointed in their object, and allowed the rock to remain on the ground instead of removing it, and they saw that it would require reblasting to render it fit for ordinary uses or for removal without the use of a derrick. There was evidently no profit in doing this, as is shown by the cost to defendants of completing the contract, and plaintiffs preferred to take their chance of success in a lawsuit in recovering for the work done, and throwing the blame on defendants for the breach of the contract. I am of opinion that plaintiffs unlawfully abandoned their contract, and that defendants Weber are entitled to set off so much as necessary of their damages for such breach as will cancel the claim of the plaintiffs in this action, and to recover against the plaintiffs for the balance, with costs.

Argued before VAN BRUNT, P. J., and BARRETT, PATTERSON, O'BRIEN, and McLAUGHLIN, JJ.

W. H. Newman, for appellants.
B. N. Cardozo, for respondents.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the referee.

---

(50 App. Div. 407.)

### In re MANNING.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

1. WILLS—CONSTRUCTION—DISINHERITANCE OF GRANDCHILD.
   In one paragraph of a will, a testator devised certain real estate to his wife. In another paragraph he devised certain lands to his son F. The next paragraph was divided into four parts, the first of which devised certain other lands to the testator's three remaining children in common; the second conferred powers on the three children after they became of age; the third provided that, in case the subject of any of the three devises mentioned should be sold, the proceeds should go to the survivor, and then provided that, if any of the three children to whom the third devise was made should die, leaving no issue, his share should go to the survivor, and, "if issue be left by any of my said children dying, such. issue shall take under this will the share of the parent." A subsequent paragraph of the will devised the residue of the estate to the wife and to each of the four children. *Held*, that the clause quoted must be construed as applying to the shares of all four of the testator's children, and that, F. having died before the testator, leaving a child surviving him, the child was entitled to take the estate which F. would have taken, if living.