### RICHMAN v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County. January, 1915.)

1. CONTRACTS (§ 322*)—COMPLIANCE WITH TERMS—EVIDENCE.

Evidence *held* sufficient to show that defendant was justified in terminating for imperfect performance plaintiff's contract to paint an elevated railroad structure.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1306, 1307, 1339, 1347, 1348, 1465, 1492, 1534–1542, 1754, 1768, 1772, 1801, 1802, 1804–1808, 1815, 1816; Dec. Dig. § 322.*]

2. MECHANICS' LIENS (§ 92*)—ABANDONMENT OF CONTRACT—EFFECT.

Where plaintiff, by his imperfect performance of a painting job, justified defendant in completing the work himself, he cannot enforce a lien upon any fund or recover personal judgment against the defendant or owner, unless there was money due him for work done before his contract was rescinded.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 123; Dec. Dig. § 92.*]

3. MECHANICS' LIENS (§ 254*)—LIENS—WANT OF DEBT—EFFECT.

Where the plaintiff contracted to pay defendant for the oil used by him on an elevated railroad painting job, he cannot foreclose a lien against defendant for work on such job, when it appears that the contract price of the work he had actually done, as conclusively shown by the certificate of the engineer in charge, is less than the sum he owes defendant for oil used in the work as provided by the contract.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 447, 448; Dec. Dig. § 254.*]

4. MECHANICS' LIENS (§ 209*)—CONTRACT—CONDITIONS—EFFECT.

Payment earned by plaintiff, but stipulated by his contract to be retained by the defendant until completion of the work, never became a debt to sustain a lien, when plaintiff abandoned the job before completion.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 383; Dec. Dig. § 209.*]

5. MECHANICS' LIENS (§ 271*)—CONTRACT—CONDITIONS—EFFECT.

Plaintiff cannot rely upon alleged extra work done by him on a painting job as having created a debt that will sustain a lien, when he does not plead the claim.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 494–513; Dec. Dig. § 271.*]

6. MECHANICS' LIENS (§ 97*)—SUBJECT-MATTER—DEBT.

Where there was no payment due defendant from his own immediate contractor, plaintiff cannot enforce a claim for a lien against him for work done on the job under a subcontract.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 129; Dec. Dig. § 97.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7. MECHANICS' LIENS (§ 291\*)—CONTRACT—CONDITIONS—COUNTERCLAIM.**

Under a contract providing that, if plaintiff should execute certain painting unsatisfactorily, the defendant might complete the work at plaintiff's expense, and that plaintiff should be liable for any excess of cost over the contract price, in an action by him to foreclose a lien for what painting he had done, where the defendant had rightfully rescinded the contract for unsatisfactory performance, an affirmative judgment and counterclaim were proper against such plaintiff for the difference between the cost of, and contract price for, completing the work.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 599–605, 607, 610; Dec. Dig. § 291.\*]

Action by Joseph A. Richman against the City of New York and others. Judgment for defendants.

Lyman Ward, of New York City, for plaintiff.

James A. Foley, of New York City, for defendant Mulcahy & Gibson, Incorporated.

Phillips, Mahoney & Wagner, of New York City (Vincent L. Leibell, of New York City, of counsel), for defendant Cooper & Evans Co.

Elkus, Gleason & Proskauer, of New York City (Vincent L. Leibell, of New York City, of counsel), for defendant American Fidelity Co. of Montpelier, Vt.

GIEGERICH, J. The action is to foreclose a lien claimed to have been acquired under a contract entered into on or about March 14, 1913, between the city of New York, by and through the public service commission for the First district, acting for the said city, and the defendant Cooper & Evans Company, whereby the latter agreed to furnish all materials for and construct a steel elevated structure, part of the subway extension, and designated as section 2 of the Astoria, Woodside & Corona Rapid Transit Railroad. The defendant Mulcahy & Gibson, Incorporated, were subcontractors of the said defendant Cooper & Evans Company, they undertaking the work of erecting and painting the steel structure. The said defendant Mulcahy & Gibson, Incorporated, sublet the painting of the entire structure to the substituted plaintiff in this case, Joseph A. Richman, trading as the Pennsylvania Steel Painting Company of Philadelphia, Pa., by a contract dated July 3, 1913. On December 31, 1913, the said Joseph A. Richman filed a lien with the public service commission of the First district and with the comptroller of the city of New York, alleging that there was due him from the defendant Mulcahy & Gibson, Incorporated, the sum of $8,333.32. On or about January 29, 1914, such lien was, pursuant to an order of this court, bonded by the filing with the comptroller of the city of New York of the bond on which the defendant Cooper & Evans Company was principal and the American Fidelity Company of Montpelier, Vt., was surety.

The plaintiff claims that, after he had completed 60 per cent. of the work called for by his contract with the defendant Mulcahy & Gibson, Incorporated, the latter forcibly ejected him from the work on December 26, 1913, and refused to permit him and his employés to complete the work which he claims he could have done, had he been allowed

to continue on the job. Upon this claim, however, I find against the plaintiff upon the facts. A fair preponderance of the evidence shows that he proceeded so slowly with the work that numerous complaints were made in writing by the defendant Mulcahy & Gibson, Incorporated, to him of the slow progress of the work and insufficient number of men engaged upon it; that complaints were also made by the engineer in charge of the work for the public service commission and by the inspectors under him of the bad work, slow progress, and shortage of men; that the paint was improperly applied by the plaintiff's men, by applying it unevenly and failing to use brushes properly and sufficiently, so as to spread it out into a uniform layer and that in consequence thereof the red (first) coat showed through the black (second) coat and the black showed through the green (third) coat. The evidence further satisfies me that workmen employed by the plaintiff quit the job repeatedly on account of a lack of money to pay them; that such wages were not paid on Saturday at the end of the week, but on the following Monday or Tuesday, and on Thursday, December 18, 1913, for the preceding week; that this delay caused continual trouble with the men on the work, who finally struck about noon on December 23d because they had not been paid their wages for the preceding week; that they also refused to work the next day, although the weather was clear; that no work was done on December 26th, the day after Christmas; and that on Saturday, the 27th, the men were rioting and destroying property.

The defendant Mulcahy & Gibson, Incorporated, took possession of the work on the afternoon of December 27, 1913, and proceeded to complete it under the contract, after having first given the plaintiff the following notice in writing, viz.:

·"December 23, 1913.

"The Pennsylvania Steel Painting Co., 1416 South Penn Square, Philadelphia, Pa.—Gentlemen: Upon going over the painting of the above job this morning, we find that all your men have stopped work and will not continue until they are paid for their services. You are hereby again formally notified that the painting of the structural steel in connection with the above mentioned contract is not proceeding in a satisfactory manner, and unless you have a sufficient number of men employed on your work within three days from this date to insure the completion of same without further delay this company will, without further notice to you, take possession of this part of the work under your contract and complete same in accordance with the contract. We will consider this letter a three days' written notice in conformity with our contract.        Very truly yours,
"Mulcahy & Gibson, L. C. Reuss, Sec."

The evidence shows that on the morning of December 27th the plaintiff came on from Philadelphia and went to the work and that his life was threatened by striking workmen; that in order to save himself from bodily harm he promised to come back at 1 o'clock in the afternoon and pay them, and that he never returned and never paid the men. The notice in question was mailed in New York City on December 23, 1913, and reached the plaintiff in Philadelphia on the following day. It was given pursuant to paragraph 7 of the said agreement between the defendant Mulcahy & Gibson, Incorporated, and the plaintiff, which paragraph reads as follows:

"Seventh. The said party of the first part further agrees that if at any time it shall abandon the work, or any part thereof, or shall refuse or neglect to prosecute the same with a force sufficient in the opinion of the party of the second part to insure its completion within the time specified in this agreement, or if the work is not being done or progressing according to the terms of this contract, the party of the second part shall have full power to notify said party of the first part to discontinue all work under this contract or any part of such work by a three days' written notice to be served upon the said party of the first part, and thereupon the said party of the second part after said three days' written notice shall discontinue the work or part thereof, and the said party of the second part shall thereupon have the power to enter upon, take possession of and complete said work or to contract for the completion of the contract, and it shall have full power to take possession, without cost, of any or all plant, rigging, tools, equipment, paint, etc., and finish the work at the party of the first part's expense, and the party of the first part shall forfeit all claim to the difference."

[1, 2] The defendant Mulcahy & Gibson, Incorporated, completed the work at a cost of $6,336.69 in excess of the price fixed in the contract in question, and for this amount it has interposed a counterclaim. Instead of having painted 60 per cent. of the structure on December 23, 1913, as claimed by the plaintiff, the evidence satisfies me that out of a total of 206 sections in the entire structure the plaintiff had painted with two coats only 58 sections, and that but 28 additional sections had been painted one coat up to that day. This is less than 30 per cent. of the work. The contract in suit required the painting of the structure to be finished within ten days after the completion of the riveting work by the defendant Mulcahy & Gibson, Incorporated. The evidence shows that the painting work was far behind the riveters on December 23, 1913, when the plaintiff's men quit work, as above stated. The plaintiff claims that the paint furnished by the defendant Mulcahy & Gibson, Incorporated, and approved by the public service commission, was defective because it did not have a proper drying capacity and that he asked permission to put in a dryer, which was refused. I do not credit this contention. The evidence satisfies me that the paint so furnished was proper, and that neither the delay in the progress of the work nor the defective character of the work was due to the quality of the paint so furnished, but to the manner in which it was applied.

The plaintiff further claims that the defendant Mulcahy & Gibson, Incorporated, promised to pay his pay rolls for the two weeks beginning December 13, 1913. All this is denied by the said defendant's officers, who are claimed to have made such alleged promise, and I am convinced by the evidence that no such agreement was ever made. But, even if it had been made, the alleged promise would have been without consideration, since, as will hereafter appear, there was nothing due under the contract to the plaintiff at the time. It clearly appears from the evidence, taken all together, that the plaintiff abandoned the work because he was not in a position financially to carry it on. The defendant Mulcahy & Gibson, Incorporated, was therefore justified in terminating his employment by the three days' written notice, which, as above shown, they gave pursuant to the seventh paragraph of the contract. As the plaintiff abandoned the contract, he cannot maintain an action for a breach thereof, nor can he have a lien upon any fund or

recover a personal judgment against any one unless there was some amount due him at the time he ceased work for work previously done. Aex v. Allen, 107 App. Div. 182, 94 N. Y. Supp. 844; Herrmann & Grace v. City of N. Y., 130 App. Div. 531, 114 N. Y. Supp. 1107, affirmed 199 N. Y. 600, 93 N. E. 376.

[3, 4] The ninth paragraph of the contract provides:

"Ninth. On or before the last day of each month the party of the second part shall pay to the party of the first part in accordance with the estimate of the engineer of the public service commission, and the estimate and conclusion of said engineer shall be final, for all work performed to the satisfaction of the public service commission during the preceding month eighty-five per cent. (85 per cent.) of the value of the estimated amount of such work performed based upon the aforesaid price, and final payment shall be made, including the fifteen per cent. retained on the monthly estimates, within ninety days (90) after the full and final completion of all the work under this agreement and the formal acceptance of the said work by the public service commission and the said party of the second part. It is further understood that the party of the first part is to pay to the party of the second part from the moneys due the party of the first part each month the number of gallons that the party of the first part may use the preceding month at ninety cents (90c.) per gallon."

It will be noted that under the terms of the contract the production of the estimate of the engineer of the public service commission is a condition precedent to an installment and that his determination is final. Molloy v. Village of Briarcliff Manor, 145 App. Div. 483, 129 N. Y. Supp. 929; Willard v. City of N. Y., 81 Misc. Rep. 48, 69, 142 N. Y. Supp. 11. The certificates of the chief engineer of the public service commission show that no painting was certified as having been done in August, September, or October, 1913. A certificate, dated December 11, 1913, was issued, however, by such chief engineer, that 585.46 tons of steel were painted with two coats between November 1 and November 30, 1913, and the voucher therefor was paid by the city of New York to the defendant Cooper & Evans Company on December 24, 1913; and the defendant Mulcahy & Gibson, Incorporated, received their check for this work from the defendant Cooper & Evans Company on December 31, 1913. The average contract price for painting work was 72 cents per ton, at which rate the 585.46 tons so certified as having been painted would give an aggregate of $421.49. As already shown, 15 per cent. was to be retained until the final certificate was given. Deducting such 15 per cent. so to be retained, which amounts to $63.22, there remained a balance of $358.27 at the time of the issuance of the certificate in question.

The defendant Mulcahy & Gibson, Incorporated, claims that the sum so certified was not applicable to the payment for any work which the plaintiff may have performed prior to the issuance thereof, as the sum certified was paid by the city after the abandonment of the work by the plaintiff, and the defendant Mulcahy & Gibson, Incorporated, was paid for this work by the defendant Cooper & Evans Company after such breach, and that the plaintiff forfeited the sum so certified. This point need not be determined, however, because under the terms of the contract the defendant Mulcahy & Gibson, Incorporated, was entitled to deduct from the monthly payments, which, as seen, were to be made

on or before the last day of each month, the value of the number of gallons of oil that the plaintiff may have used the preceding month at the rate of 90 cents per gallon, and the aggregate value of the oil so used far exceeds the balance above mentioned. The 15 per cent. of the value of the work was, by the terms of the contract between the plaintiff and the defendant Mulcahy & Gibson, Incorporated, to be re- tained by the latter until the final completion of all the work and the formal acceptance of it by the public service commission and the said defendant. As the work was never completed by the plaintiff, the 15 per cent. so retained never became due to him, and hence nothing was due to him when his lien was filed. Kelly v. Bloomingdale, 139 N. Y. 343, 34 N. E. 919.

[5, 6] The plaintiff claims that he is entitled to $1,250 for extra work in painting connections. This contention cannot be sustained. Such claim for extra work is not even pleaded by the plaintiff, and the painting of connections was within the city's specifications and contract. The defendant Mulcahy & Gibson, Incorporated, and the plaintiff, its subcontractor, were properly compelled to perform such work by the public service commission, and nothing was allowed by the city therefor as extra work under the final certificate of the chief engineer of the public service commission. From what has been said it is clear that at the time the lien of the plaintiff was filed there was not any sum whatever due and owing from the defendant Cooper & Evans Company to the defendant Mulcahy & Gibson, Incorporated, under the contract. There was therefore nothing to which a lien could attach. Willard v. City of N. Y., supra.

The plaintiff has consequently failed to establish an essential part of his case as against the defendant Cooper & Evans Company. This being so, it will not be necessary to determine whether, as claimed by the latter, the lien of the plaintiff had lapsed by reason of the failure to serve certain of the defendants with a copy of the summons within the period specified by section 21 of the Lien Law (Consol. Laws, c. 33). The plaintiff's counsel has renewed the motion made by him dur- ing the trial with respect to the pleadings, and after carefully consider- ing the briefs submitted and examining the cases cited I see no reason for changing the rulings made by me. My conclusion, so far as con- cerns the defendant Cooper & Evans Company, is that the complaint should be dismissed as to that defendant, with costs.

The bond given by the defendant last named as principal and the defendant American Fidelity Company of Montpelier, Vt., to discharge the lien of the plaintiff was conditioned for the payment by said defend- ant Cooper & Evans Company of any judgment which might be ren- dered by reason of the plaintiff's alleged lien. As the rendition of such a judgment would not, in my opinion, be warranted by the evidence, the complaint should also be dismissed as to the said defendant Ameri- can Fidelity Company of Montpelier, Vt. (Contractors' Supply Co. v. City of N. Y., 153 App. Div. 60, 64, 65, 138 N. Y. Supp. 242; Willard v. City of N. Y., supra, 81 Misc. Rep. at page 72, 142 N. Y. Supp. 11), with costs. The action was discontinued on the trial as to the defend-

ant the city of New York. As already shown, the complaint should be dismissed as to the defendant Mulcahy & Gibson, Incorporated.

[7] There remains for consideration the issues arising upon the counterclaim interposed by the defendant Mulcahy & Gibson, Incorporated. In an action to foreclose a mechanic's lien, the right to a counterclaim against a lienor arising out of his breach of contract was expressly supported in Cody v. Turn Verein, 48 App. Div. 279, 64 N. Y. Supp. 219, affirmed 167 N. Y. 607, 60 N. E. 1108, and Woolf v. Schaeffer, 41 Misc. Rep. 640, 85 N. Y. Supp. 205, in both of which cases the lienor's rights had been lost by reason of his abandonment of the contract. In the case at bar the contract provides that in the event the defendant Mulcahy & Gibson, Incorporated, takes possession of and completes the work, the finishing of the work shall be at the plaintiff's expense and that he shall forfeit all claim to the difference, if any. The plaintiff would therefore have had no right to the excess of the contract price above the cost of completion of the contract if there had been any such excess. In fact there is deficiency, and he is liable by the terms of the contract for the difference between the cost of completion and the contract price. It appears from the evidence that the defendant Mulcahy & Gibson, Incorporated, had practically to do the entire work over again, and that all the paint supplied to the plaintiff was wasted. It was further established by the evidence that the reasonable and actual cost of completing the work required to be done under the contract was $15,030.69. From this there was deducted by consent of counsel during the course of the trial an item of $94, making the net cost $14,936.69. Deducting $8,600, the amount of plaintiff's contract, leaves due the defendant Mulcahy & Gibson, Incorporated, for their counterclaim against the plaintiff, the sum of $6,336.69. The defendant Mulcahy & Gibson, Incorporated, is therefore entitled to judgment on its counterclaim for that amount, with costs, but no interest will be allowed, as the amount was unliquidated.